CITY OF WHITEHALL, APPELLANT, *v.* MOLING, APPELLEE.

(No. 86AP-1037—Decided September 22, 1987.)

*J. Theodore Zwayer,* city attorney, *Durkin, Cline & Co., L.P.A.,* and *Richard A. Cline,* for appellant.

*Haytcher & Denardo* and *Paul J. Haytcher,* for appellee.

FAIN, J. Plaintiff-appellant, city of Whitehall, appeals from a judgment entered in the Franklin County Municipal Court sustaining defendant-appellee Robert C. Moling's motion to

dismiss the charges against him on equal protection grounds. We conclude that Moling failed to demonstrate that the city of Whitehall's policy of selective enforcement of its ordinance violated his rights under the Equal Protection Clause. Consequently, we hold that the trial court erred in sustaining the motion to dismiss.

Whitehall Codified Ordinances Section 351.13(a)(1) broadly prohibits parking or storing commercial vehicles in a residential district. Under Section 351.13(b), a violation is subject to the penalties set forth in Planning and Zoning Code Section 1126.99.

It had been the city of Whitehall's policy to enforce the ban on parking commercial vehicles in residential districts only when a complaint was received about a specific violation. However, during August and September 1984, several Whitehall residents attended city council committee meetings and expressed dissatisfaction with this policy. According to the residents, the noise and fumes associated with larger commercial vehicles made strict enforcement of Section 351.13(a)(1) a necessity.

At the council meeting held September 24, 1984, the Mayor of Whitehall, John A. Bishop, explained that, after reviewing the problem, he could find no reason to change the city's method of enforcing Section 351.13(a)(1).[1] However, Mayor Bishop stated that, while the complaint-only enforcement policy would remain in effect for violations of Section 351.13(a)(1) that occurred on residential property, the Whitehall police would begin to strictly enforce the ban as to commercial vehicles parked on residential streets. Mayor Bishop summarized his conclusions in an executive order, dated September 24, 1984, which provided, in pertinent part, as follows:

"Whereas, the City of Whitehall has numerous ordinances dealing with zoning, signs, health, traffic, and criminal matters that we find it virtually impossible to enforce them all in a strict manner, given the limited number of personnel that we have and/or that it is reasonable for us to have.

"As a practical matter we must set priorities for our personnel to follow and to concentrate on day after day. Those things that do not create a danger to the health and safety of the citizen must take a lower priority and be enforced on a complaint received basis only or when an officer sees a flagrant violation.

"Therefore after two public hearings and after conferring with other officials, I hereby order that the Parking of Prohibited Commercial Vehicles as described in the Codified Ordinances in Residential Districts will continue to be enforced on *citizen complaint only,* except that Prohibited Commercial Vehicles shall not be allowed to park on any paved portion of any street in this City. Such parking constitutes a hazard to the safety of our citizens."[2] (Emphasis in original.)

Robert C. Moling was a resident of Whitehall who worked as a truck driver. Pursuant to the new enforcement policy, Moling was cited on four separate occasions under Section 351.13(a)(1) for having his employer's truck parked on his property. These citations were the result of complaints filed against Moling by his neighbors.

---

[1] The Whitehall City Charter, Section 25(B), gives the mayor responsibility for seeing that city ordinances are enforced.

[2] In a subsequent executive order, dated January 27, 1986, Mayor Bishop amended this order by deleting everything in the third paragraph following the phrase "citizen complaint only."

According to Moling, several other people in the immediate area were also in violation of Section 351.13(a)(1), but only he was cited by the police.

After Moling appeared in the Whitehall Mayor's Court and demanded a trial by jury, the case was transferred to the Franklin County Municipal Court. On March 14, 1985, Moling filed a motion to dismiss the charges against him, claiming that the city of Whitehall had denied him equal protection of the law by enforcing Section 351.13(a)(1) in a discriminatory manner. A hearing was held on Moling's motion on July 11, 1985. In a judgment entry filed October 14, 1986, the trial court held as follows:

"The City has failed to establish a reasonable basis for distinguishing between violations of the subject ordinance that occur on the city's streets rather than on residential property.

"Rather than setting a lower priority for police enforcement of violations on residential property, the City has created a method of enforcement that prohibits citations by the police unless a citizen complaint is received.

"Although this Court finds the City's rationale for its Executive Order logical on its face and without evil intent towards the Defendant the City's action violates the equal protection clause of both the United States and Ohio Constitutions.

"This Court sustains the Defendant's Motion to Dismiss for the reasons set forth above."

From this decision, the city of Whitehall appeals to this court, presenting the following assignment of error:

"The court below erred in holding that the city's executive order of September 24, 1984 violated the Equal Protection Clause of the United States and the Ohio Constitutions."

In its brief, the city of Whitehall concedes that Section 351.13(a)(1) was selectively enforced and that this selectivity was consciously exercised. However, according to the city, since Moling failed to demonstrate that this selectivity was based upon some unjustifiable or invidious standard such as race or religion, Moling failed to show discriminatory enforcement.

In response, Moling argues that the trial court's decision was correct since Mayor Bishop's executive order created an arbitrary, unreasonable distinction that punished some while allowing others equally guilty to go free. For the reasons set forth below, we find Moling's argument unpersuasive.

We note first that, prior to the executive order, Section 351.13(a)(1) was enforced solely on the basis of citizen complaints. After the order went into effect, the complaint-only enforcement policy remained in force for violations of Section 351.13(a)(1) which occurred on residential property. Since all of Moling's citations were for parking his truck off the street on his own property, he was not a member of the group selected for a heightened degree of enforcement under the new policy. Consequently, Moling did not have standing to challenge the validity of the executive order on constitutional grounds. See *Anderson* v. *Brown* (1968), 13 Ohio St. 2d 53, 42 O.O. 2d 100, 233 N.E. 2d 584; *State* v. *Burgun* (1978), 56 Ohio St. 2d 354, 365, 10 O.O. 3d 485, 491-492, 384 N.E. 2d 255, 263.

Moreover, even if we were to find that Moling had standing to assert his constitutional challenge, we note that Section 3, Article XVIII of the Ohio Constitution gives municipalities all powers of local self-government, including the power to adopt and enforce

local police regulations.[3] Ordinances enacted pursuant to this power are entitled to a strong presumption of constitutionality. *Hudson* v. *Albrecht, Inc.* (1984), 9 Ohio St. 3d 69, 9 OBR 273, 458 N.E. 2d 852. Under the police power, municipalities have broad discretion to regulate the use of streets and highways within their limits, subject to the protections provided by the United States and Ohio Constitutions. *Union Sand & Supply Corp.* v. *Fairport* (1961), 172 Ohio St. 387, 16 O.O. 2d 244, 176 N.E. 2d 224; *Adrian* v. *St. Paris* (1983), 12 Ohio App. 3d 71, 72, 12 OBR 213, 215, 465 N.E. 2d 1356, 1358. In our opinion, Moling has failed to demonstrate that the executive order of September 24, 1984, was in conflict with the United States and the Ohio Constitutions. It is reasonable to conclude that commercial vehicles parked on residential streets are more obtrusive and more hazardous than the same vehicles parked on residential property, since they tend to obstruct the safe passage of traffic through narrow, residential streets. Therefore, the distinction made in Mayor Bishop's executive order was rational and bore a substantial relationship to a legitimate governmental interest. See *City of Cleburne* v. *Cleburne Living Center, Inc.* (1985), 473 U.S. 432; *Cincinnati Motor Transp. Assn.* v. *Lincoln Hts.* (1971), 25 Ohio St. 2d 203, 54 O.O. 2d 317, 267 N.E. 2d 797; *Niles* v. *Dean* (1971), 25 Ohio St. 2d 284, 54 O.O. 2d 392, 268 N.E. 2d 275.

We also cannot agree with Moling that the city of Whitehall's enforcement policy violated the principle set forth in *Yick Wo* v. *Hopkins* (1886), 118 U.S. 356. In *Yick Wo*, the United States Supreme Court held that, when a San Francisco ordinance regulating the construction of wooden laundries was being enforced almost exclusively against laundries run by Chinese aliens, such enforcement violated the Equal Protection Clause of the Fourteenth Amendment. At one point in the opinion, the court stated that:

"* * * Though the law itself be fair on its face and impartial in appearance, yet, if it is applied and administered by public authority with an evil eye and an unequal hand, so as practically to make unjust and illegal discriminations between persons in similar circumstances, material to their rights, the denial of equal justice is still within the prohibition of the Constitution. * * *" *Id.* at 373-374.

However, the Supreme Court has held that the conscious exercise of some selectivity in enforcing a statute fair on its face does not in and of itself amount to a constitutional violation. *Oyler* v. *Boles* (1962), 368 U.S. 448. In *Snowden* v. *Hughes* (1944), 321 U.S. 1, the court held that, in order for selective enforcement to amount to a denial of equal protection, an element of purposeful or intentional discrimination must be shown. *Snowden, supra,* at 8-9. See, also, *Wayte* v. *United States* (1985), 470 U.S. 598, 607-610. The burden of showing discriminatory enforcement is a heavy one and is not satisfied by a mere showing that others similarly situated have not been prosecuted. *State* v. *Freeman* (1985), 20 Ohio St. 3d 55, 20 OBR 355, 485 N.E. 2d 1043. In *State* v. *Flynt* (1980), 63 Ohio St. 2d 132, 17 O.O. 3d 81, 407 N.E. 2d 15, the Ohio Supreme Court held that, in order to demonstrate in-

---

[3] Section 3, Article XVIII of the Ohio Constitution provides as follows:

"Municipalities shall have authority to exercise all powers of local self-government and to adopt and enforce within their limits such local police, sanitary and other similar regulations, as are not in conflict with general laws."

tentional or purposeful discrimination, a defendant must make at least a *prima facie* showing of the following:

"'* * * (1) [T]hat, while others similarly situated have not generally been proceeded against because of conduct of the type forming the basis of the charge against him, he has been singled out for prosecution, and (2) that the government's discriminatory selection of him for prosecution has been invidious or in bad faith, *i.e.,* based upon such impermissible considerations as race, religion, or the desire to prevent his exercise of constitutional rights. * * *'" *Id.* at 134, 17 O.O. 3d at 82, 407 N.E. 2d at 17, quoting *United States* v. *Berrios* (C.A. 2, 1974), 501 F. 2d 1207, 1211.

While Moling acknowledges these general principles, he contends that under Ohio law, a distinction is made between those prosecuted under criminal statutes and those prosecuted under regulatory statutes. According to Moling, it is Ohio's policy that those prosecuted under regulatory statutes are to be accorded a higher level of constitutional protection and need only show that the statute in question has been selectively enforced in order to establish a denial of equal protection.

We have been unable to find support for Moling's contention that a defendant prosecuted under a regulatory statute is relieved of his obligation to show that his prosecution was based upon a constitutionally impermissible standard such as race, religion, or other arbitrary classification. In our own review of the case law, we have found that, whether the statute in question was regulatory or criminal in nature, courts have uniformly required the defendant to show not only that others similarly situated have not been prosecuted, but also that his own prosecution was invidiously motivated. In our opinion, Moling's evidence was insufficient to establish that his prosecution was the result of invidious motives

or bad faith on the part of the Whitehall authorities.

In *In re 303 West 42nd St. Corp.* v. *Klein* (1979), 46 N.Y. 2d 686, 416 N.Y. Supp. 2d 219, 389 N.E. 2d 815, the Court of Appeals of New York noted that, since law enforcement authorities are unlikely to state in public that a prosecution has been undertaken in bad faith, conscious discrimination may be inferred from a showing of a grossly disproportionate incidence of non-enforcement against others similarly situated in all relevant aspects save for that which furnishes the basis of the claimed discrimination. *Id.* at 695, 416 N.Y. Supp. 2d at 224, 389 N.E. 2d at 819-820. Applying this reasoning to the case before us, we note that Officer Ian Bourdo of the Whitehall Police Department testified below that he had issued citations to other residents of Whitehall for violations of Section 351.13(a)(1). We note also that there is no indication in the record that Whitehall police officers failed to respond to complaints about violations of Section 351.13(a)(1), other than those which were directed at Moling. Finally, Mayor Bishop gave no indication in his deposition that he had adopted the enforcement policy in a conscious effort to single out Moling for prosecution. Therefore, although it may be true that Section 351.13(a)(1) was enforced with an "unequal hand," we do not believe that Moling's evidence was sufficient to support a conclusion that the city of Whitehall acted with an "evil eye." As Moling failed to establish an essential element of his claim of discriminatory enforcement, the trial court improperly sustained his motion to dismiss.

Finally, Moling argues that the trial court's ruling on his motion was correct since equal protection problems are inherent in a complaint-only enforcement policy. Moling cites two New York cases, *People* v. *Acme Markets, Inc.* (1975), 37 N.Y. 2d 326, 372

N.Y. Supp. 2d 590, 334 N.E. 2d 555, and *People* v. *T. S. Klein Corp.* (1976), 86 Misc. 2d 354, 381 N.Y. Supp. 2d 787, in support of his argument that a complaint-only enforcement policy creates the possibility that private citizens will manipulate the enforcement process for their own purposes. However, while the cases cited by Moling illustrate the potential dangers of a complaint-only enforcement policy, we do not believe that they stand for the proposition that enforcing a statute solely on the basis of citizen complaints is *per se* unconstitutional. We agree with Moling that a complaint-only enforcement policy may lead to a situation where law enforcement has become so influenced by private concerns that equal protection is violated; however, the evidence in this case falls far short of establishing that a complaint-only enforcement policy has actually produced invidious discrimination.

Appellant's assignment of error is sustained. The judgment of the trial court is reversed and the cause is remanded for trial on the merits.

*Judgment reversed and cause remanded.*

STRAUSBAUGH, P.J., and BOWMAN, J., concur.

FAIN, J., of the Second Appellate District, sitting by assignment in the Tenth Appellate District.