OPINION
{¶ 1} Defendants-appellants, Buckeye Land Development, LLC ("Buckeye") and Daniel O'Shaughnessy, appeal the judgment of the Trumbull County Court of Common Pleas, granting a permanent injunction preventing O'Shaughnessey's operation of a landscaping business situated on certain property, comprising 23 acres, located at 601 *Page 2 
West Center Street in Champion Township, Trumbull County, Ohio. We affirm the judgment of the trial court.
 {¶ 2} Appellant, Buckeye, a Limited Liability Company registered and organized under the laws of the State of Ohio, is record owner of the property in question, which was acquired by deed from Martin Nutt and his two sons on March 18, 2002. Appellant, O'Shaughnessy, is one of the members of Buckeye as well as its statutory agent. From the time the property was purchased through when the instant action was commenced, appellee Ghindia served as Zoning Inspector for Champion Township.[1]
The subject property is located in an area zoned residential by the Champion Township Zoning Resolution.[2]
 {¶ 3} Prior to appellants' purchase, Martin Nutt and his son, Thomas, operated a nonconforming excavating business on the subject property. Thomas Nutt and his family ceased active operation of the excavating business in November of 1999. Through the early part of 2000, Thomas Nutt engaged in activities associated with the winding down of the business, including the removal of materials from the property and the sale of certain equipment. The necessary papers for the dissolution of the corporate entity were filed with the Ohio Secretary of State's Office in 2000. Thomas Nutt testified that he continued to use the property for the storage of equipment up until the time of the sale of the property to Buckeye. *Page 3 
 {¶ 4} In the fall of 2001, O'Shaughnessy, who had previously operated a commercial landscaping business from another location, sought to relocate his business and commenced negotiations with Thomas Nutt for the purchase of the property. While negotiations were underway, O'Shaughnessy met with Ghindia to seek assurances that the operation of his business on the property would not run afoul of Township zoning regulations. After receiving verbal representations from Ghindia that his proposed use of the property was lawful and that no special permits would be required, O'Shaughnessy proceeded to close on the purchase. In anticipation of the closing of the transaction, O'Shaughnessy, with permission from Thomas Nutt, began to store materials and equipment on the property in January and February of 2002.
 {¶ 5} In late March of 2002, O'Shaughnessy officially commenced operation of his business from the property. In addition to the property being used for the overnight storage of equipment used by the offsite work crews, the property was also used for the ongoing processing, storage, and loading of aggregate materials utilized in the business, including mulch, compost, topsoil and limestone. These activities subsequently led to complaints from some of the neighboring property owners.
 {¶ 6} In October 2002, appellants began construction of a 28 x 80 foot accessory building on the property, without first obtaining the necessary building permit. On November 2, 2002, Ghindia issued notice of violation and a stop work order.
 {¶ 7} On April 8, 2004, appellee commenced the instant action, pursuant to R.C. 519.24, seeking to enjoin O'Shaughnessey from operating his business on the property. The petition for injunction alleged that O'Shaughnessy's operation of the landscaping business was in violation of the Township zoning resolution, that the construction of the *Page 4 
aforementioned building without making application for or obtaining a permit was in violation of the zoning resolution, and that the current use of the property constituted a nuisance under the zoning resolution and Ohio Revised Code Section 3767.13.
 {¶ 8} In their answer, appellants denied all allegations and asserted affirmative defenses, including the valid continuation of a prior lawful non-conforming use, estoppel and selective enforcement.
 {¶ 9} On May 28, 2004, the parties stipulated to a judgment entry imposing a preliminary injunction against appellants, which limited the scope and hours of operation of the landscaping business on the property.
 {¶ 10} On June 19, 2006, following a hearing on the petition for a permanent injunction, the trial court filed its judgment entry finding, in relevant part, that appellants' use of the property for the purpose of conducting a landscaping business was not an agricultural use of the property pursuant to R.C. 519.01; that appellants' use of the property was not a valid continuation of a prior lawful non-conforming use; that prior statements made by the prior zoning inspector did not estop the Township from enforcing its zoning resolution; and that appellants' use of the property did not constitute a nuisance.
 {¶ 11} Based upon these conclusions of law, the judgment entry ordered as follows:
 {¶ 12} "WHEREFORE, IT IS ORDERED, ADJUDGED AND DECREEED that Defendants * * * hereby are Permanently Restrained and Enjoined from locating, conducting and operating a landscaping business on the property located at 601 West *Page 5 
Center Street, Champion Township, in a residential district in violation of the Champion Township Zoning Resolution.
 {¶ 13} "IT IS FURTHER ORDERED, ADJUDGED AND DECREED that whereas the Defendant [O'Shaughnessy] is currently pursuing an application for a conditional use permit to conduct a landscaping business on the property * * * on Remand by Honorable Peter Kontos, Trumbull County Common Pleas Court Case No. 2006-CV-41, the Order of Permanent Injunction is stayed pending the decision of the Champion Township Zoning Board of Appeals and pending decision of Judge Kontos on any appeal from the decision of the Champion Township Board of Zoning Appeals.
 {¶ 14} "IT IS FURTHER ORDERED ADJUDGED AND DECREED that this court's previous Order of Preliminary Injunction remain in full force and effect during the stay of the Permanent Injunction Order."
 {¶ 15} It is from this entry that appellants timely filed their notice of appeal, assigning the following as error:
 {¶ 16} "The trial court erred to the prejudice of the Appellants by granting a permanent injunction prohibiting the Appellants from operating a landscaping business on its [sic] property."
 {¶ 17} As stated earlier, appellant brought the action for injunctive relief against appellees pursuant to R.C. 519.24, which provides, in relevant part, as follows:
 {¶ 18} "In case any building * * * or any land is or is proposed to be used in violation of sections 519.01 to 519.99 * * * of the Revised Code, or of any regulation of provision adopted by any board of township trustees under such sections, such board, the prosecuting attorney of the county, the township zoning inspector, or any adjacent *Page 6 
or neighboring property owner who would be especially damaged by such violation, * * * may institute injunction * * * or any other appropriate action or proceeding to prevent * * * such unlawful * * * use."
 {¶ 19} R.C. 519.24 thus creates a cause of action against a landowner who uses or proposes to use his land in violation of any of the provisions R.C. Chapter 519 or any township zoning resolution.Moskoff v. Bd. of Trustees of Deerfield Twp. (Dec. 6, 1994), 11th Dist. No. 93-P-0103, 1994 Oho App. LEXIS 5712, at *5, citing Barbeck v.Twinsburg Twp. (1990), 69 Ohio App.3d 837, 840. Under this code section, "a board of township trustees, a county prosecuting attorney, or a township zoning inspector may file an action for injunction to prevent any unlawful use of buildings or land." Baker v. Blevins,162 Ohio App.3d 258, 2005-Ohio-3664, at ¶ 12. Because the remedy is statutory, the petitioner need only show that a violation of the ordinance is occurring and is "not required to plead or prove no irreparable injuryor that there is no adequate remedy at law, as is required by Civ.R. 65." Id. (emphasis added), quoting Union Twp. Bd. of Trustees v. Old 74Corp. (2000), 137 Ohio App.3d 289, 294. Rather, the petitioner must prove, by clear and convincing evidence, that the property is being used in violation of the zoning ordinance. Id. (citation omitted).
 {¶ 20} The trial court's decision to grant an injunction is reviewed under an abuse of discretion standard. Id at ¶ 17; Perkins v. QuakerCity (1956), 165 Ohio St. 120, 125; State ex rel. Miller v. PrivateDancer (1992), 83 Ohio App.3d 27, 32. An abuse of discretion consists of more than an error of law or judgment. Rather, it implies that the court's attitude is unreasonable, arbitrary, or unconscionable. Berk v.Matthews (1990), 53 Ohio St.3d 161, 169 (citation omitted). Absent a clear showing that the trial court *Page 7 
abused its discretion in granting the injunction, an appellate court cannot reverse the judgment of the trial court. Miller,83 Ohio App.3d at 32 (citation omitted).
 {¶ 21} The following four arguments offered by appellants challenge the trial court's findings of fact. An appellate court will not reverse a trial court's findings of fact unless it is against the manifest weight of the evidence. Seasons Coal Co. v. Cleveland (1984),10 Ohio St.3d 77, 80. "Judgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed by a reviewing court as being against the manifest weight of the evidence."CE. Morris Co. v. Foley Const. Co. (1978), 54 Ohio St.2d 279, syllabus.
 {¶ 22} Appellants first argue that the trial court erred and abused its discretion by granting the permanent injunction, since appellee failed to prove that the prior use was discontinued for longer than two years, and since their use of the property was a lawful substitution of a prior existing non-conforming use. We disagree.
 {¶ 23} "A nonconforming use is a lawful use of property in existence at the time of enactment of a zoning resolution which does not conform to the regulations under the new resolution." Aluminum Smelting Refining Co. Inc. v. Denmark Twp. Zoning Bd. of Zoning Appeals, 11th Dist. No. 2001-A-0050, 2002-Ohio-6690, at ¶ 14 (citation omitted). Nonconforming uses are not "favorites of the law" and are allowed to exist and continue due to "constitutional prohibitions against immediate termination of the use." Id.
 {¶ 24} R.C. 519.19 governing the non-conforming use of land states, "[t]he lawful use of * * * any land or premises, as existing and lawful at the time of the enactment of a zoning resolution * * *, may be continued, * * * but if any such nonconforming use is *Page 8 voluntarily discontinued for two years or more, any future use of said land shall be in conformity with sections 519.02 to 519.25, inclusive, of the Revised Code."[3]
 {¶ 25} A review of the hearing transcript reveals that the parties stipulated that prior to appellants' ownership, the Nutts had operated an excavation business on the subject property prior to the enactment of township zoning and that such use constituted a legal nonconforming use. Thus, the only issues remaining for determination were whether the prior nonconforming use had been voluntarily discontinued for two years and, if not, whether the landscaping business was a valid continuation of the prior nonconforming use of the property.
 {¶ 26} "The party claiming that the use was voluntarily discontinued bears the burden, by a preponderance of the evidence, of demonstrating that fact to the trial court. Aluminum Smelting, 2002-Ohio-6690, at ¶ 15, citing Bd. of Twp. Trustees of Washington Twp. v. Grogoza (Feb. 8, 2001), 5th Dist. No. 00-AC46-2, 2001 Ohio App. LEXIS 595, at *10. "In order to show a voluntary discontinuance of a nonconforming use, a party opposing the use must demonstrate that there has been a manifest intention to abandon the nonconforming use." Bd. of Trustees ofWilliamsburg Twp. v. Kreimer (1991), 72 Ohio App.3d 608, 612; see alsoRecreational Facilities v. Hambden Twp. Bd. of Trustees (June 30, 1995), 11th Dist. No. 93-G-1819, 1995 Ohio App. LEXIS 2804, at *6. "Abandonment requires affirmative proof of the intent to abandon coupled with acts or omissions implementing the intent. Mere non-use is not sufficient to establish the fact of abandonment, absent other evidence tending to prove the intent to abandon." *Page 9 Davis v. Suggs (1983), 10 Ohio App.3d 50, 52, citing Kiser v. Bd. ofCty. Commrs. of Logan Cty. (1911), 85 Ohio St. 129, 131.
 {¶ 27} In the instant matter, the trial court made the following findings of fact related to the abandonment of the prior non-conforming use:
 {¶ 28} "Thomas Nutt, one of the three (3) shareholders of the excavating business that previously owned the land in question, testified that the decision was made in November 1999 to close down the business. * * * On November 15, 1999, Thomas and Martin Nutt executed the Certificate of Dissolution by Shareholders evidencing their intent to dissolve the corporation, and filed the same with the Ohio Secretary of State's Office as documented in Schedule A. From the time that the decision was made to dissolve the corporation and cease doing business, until the property was sold in March 2002, Mr. Nutt testified that the corporation did not do any jobs for any clients or receive any financial compensation * * *. Further, he stated during that time, he was moving equipment off of the property and `just taking care of his stuff.' From his testimony and the attached Exhibit A, it is clear that the owners voluntarily discontinued the non-conforming use of the property in November 1999. The property did not change hands until March 18, 2002, when the property was purchased by Defendants and title recorded in Defendant's names * * *. From November 1999, until March 2002, absolutely no evidence, testimony or other use, [sic] was presented that any business was conducted on the property. Even if, for the sake of argument, this timeline is reduced to January or February, 2002, the point in time that Mr. O'Shaughnessy testified that he moved equipment and supplies onto the property, it is still outside the two (2) year window allowed pursuant to R.C. 519.19." *Page 10 
 {¶ 29} Based upon the foregoing, we cannot conclude that the trial court abused its discretion by concluding that Thomas and Martin Nutt manifested the intent to discontinue their nonconforming use of the property on November 15, 1999, and that the nonconforming use was discontinued for a period exceeding two years prior to O'Shaughnessy's resumption of commercial activities on the property. Since the nonconforming use was discontinued for a period exceeding the statutory limitation, we need not consider appellants' argument that the landscaping business was a valid continuation of an ancillary nonconforming use, i.e, the storage of topsoil, equipment, and other materials which were associated with the landscaping business.
 {¶ 30} Appellants next argue that the trial court erred by concluding that their use of the property was not subject to the agricultural exemption. We disagree.
 {¶ 31} Subject to specifically enumerated exceptions, R.C. 519.21
confers no power on a Township or its zoning authorities "to prohibit the use of any land for agricultural purposes." R.C. 519.21(A);Lordstown v. Barnhart (Feb. 21, 1992), 11th Dist. No. 90-T-4494, 1992 Ohio App. LEXIS 866, at *9.
 {¶ 32} For the purposes of R.C. Chapter 519, agriculture is defined as "* * * horticulture; viticulture; * * * the production of * * * nursery stock, ornamental shrubs, ornamental trees, flowers, sod, or * * * timber; * * * [or] any combination of the foregoing; [and] the processing, drying, storage, and marketing of agricultural products when those activities are conducted in conjunction with, but are secondary to, such * * * production." R.C. 519.01.
 {¶ 33} In State ex rel. Fox v. Orwig (Sept. 15, 1995), 11th Dist. No. 94-T-5100, 1995 Ohio App. LEXIS 4022, this court held that the operation of a landscaping *Page 11 
business was not an agricultural use of property. Id. at *11. In so doing, we relied on the dictionary definitions of floriculture and horticulture, which are defined as "`the cultivation and management of ornamental and flowering plants,' and `the science and art of growing fruits, vegetable[s], flowers, or ornamental plants.'" Id. at *10-*11. Appellants urge that the case sub judice is factually distinguishable, since O'Shaughnessy uses the property primarily for the storage of equipment, the storage and processing of mulch used in landscaping jobs, and since no sales are made from the premises. We disagree.
 {¶ 34} In Orwig, we did not rely on the aforementioned factors in determining that appellant's landscaping business was not an agricultural use of the property. Rather, we relied on the fact that "[t]he trees, shrubbery, sod, and other plants were not grown on theland" and "the compost * * * was made from yard waste, leaves and other material returned from landscaping jobs * * *." Thus, "these activities [i.e. the cultivation, processing and storage of mulch] were merely an accommodation to appellants' landscaping business." Id. at *11. Such is the case here. Accordingly, the trial court's finding that appellants' landscaping business was not an agricultural use of the property was not against the manifest weight of the evidence. Cf. State v. Spithaler
(Mar. 3, 2000), 98-T-0197, 2000 Ohio App. LEXIS 809, at *8-*9 (appellants' purchase of standing timber from owner's property for resale, followed by the harvesting and processing of the trees with a portable sawmill brought onto the property constitutes an agricultural use not subject to a Township's regulatory powers under R.C. 519.21);Bd. of Franklin Twp. Trustees v. Armentrout, 11th Dist. No. 2000-P-0082, 2001-Ohio-8719, 2001 Ohio App. LEXIS 5660, at *5-*6 (processing of sod and topsoil sold was held to be *Page 12 
agricultural use where topsoil and sod were harvested from and a portion was used on the subject property).
 {¶ 35} Appellants next argue that the trial court erred in concluding that equitable estoppel did not apply to prohibit the township from obtaining an injunction against them. We disagree.
 {¶ 36} Equitable estoppel precludes a party from asserting certain facts where the party, by his conduct, has induced another to change his position in good faith reliance upon that conduct. London LancashireIndem. Co. of Am. v. Fairbanks Steam Shovel Co. (1925),112 Ohio St. 136, 152 (citation omitted).
 {¶ 37} As a general rule, the principles of estoppel "may not be applied against the state or its agencies when the act or omission relied on involves the exercise of a governmental function." Pilot OilCorp. v. Ohio Dept. of Transp. (1995), 102 Ohio App.3d 278, 282-283, quoting Sun Refining Marketing Co. v. Brennan (1987),31 Ohio St.3d 306, 307; Protzman v. Painesville, 11th Dist. No. 2004-L-069,2005-Ohio-3404, at ¶ 23 (citations omitted). Enforcement of zoning laws is in the nature of a governmental function. Petitti v. Plain Twp. Bd.of Zoning Appeals, 5th Dist. No. 2003CA00179, 2003-Ohio-6849, at ¶ 23
(citation omitted).
 {¶ 38} "The elements of equitable estoppel require that first there be a factual representation by words, acts or silence or concealment of a material fact (or at least a position contrary to that now taken). Thefacts underlying the representation must be known to the party at thetime he makes it, or circumstances must be such that knowledge is chargeable to him. Second, the representation must be misleading. Third, the representation must induce actual reliance by the second party and such *Page 13 
reliance must be reasonable under the circumstances and in good faith. Fourth, the relying party would suffer prejudice or pecuniary disadvantage if the first party is not estopped from asserting an otherwise valid right in contradiction to his earlier representation."Oxford v. Day (Mar. 16, 1998), 12th Dist. No. CA96-09-183, 1998 Ohio App. LEXIS 1003, at *7-*8 (citations omitted) (emphasis added).
 {¶ 39} In order to succeed on a claim of equitable estoppel, "[t]he party raising the defense bears the burden of demonstrating its applicability." Machnics v. Sloe, 11th Dist. No. 2004-G-2554,2005-Ohio-935, at ¶ 68, citing MatchMaker Internatl., Inc. v. Long, (1995), 100 Ohio App.3d 406, 408.
 {¶ 40} Appellants have failed to demonstrate that the facts underlying Ghindia's alleged misrepresentation were known to him at the time the statement was made. While Fonce testified that she overheard a conversation between Ghindia and O'Shaughnessy in which O'Shaughnessy was told that operating a landscaping business from the subject property would be a permissible use of his landscaping business, there was no testimony as to the basis upon which Ghindia offered his opinion. In O'Shaugnessy's testimony, he admitted telling Ghindia that part of his planned use of the property was "to store materials and store equipment and use it for * * * a tree farm * * * with plant material," which would have been a permissible agricultural use for the property. Moreover, appellants' further admit that Ghindia was not aware of our holding in "the Bockelman" [Orwig] case until some period of time after he had made the representation to O'Shaughnessy. Since O'Shaughnessy's own testimony demonstrates that the facts underlying the alleged misrepresentation were not known to Ghindia at the time the representation was made, appellants have failed to *Page 14 
sustain their burden. Accordingly, the trial court did not err in concluding that equitable estoppel did not apply.
 {¶ 41} Lastly, appellants argue that the trial court erred by concluding that appellees did not selectively enforce the zoning resolution against him. We disagree.
 {¶ 42} In order to support a defense of selective prosecution, "a defendant bears the heavy burden of establishing, at least primafacie, (1) that, while others similarly situated have not generally been proceeded against because of conduct of the type forming the basis of the charge against him, he has been singled out for prosecution, and (2) that the government's discriminatory selection of him for prosecution has been invidious or in bad faith, i.e., based upon such impermissible considerations as race, religion, or the desire to prevent his exercise of constitutional rights. These two essential elements are sometimes referred to as `intentional and purposeful discrimination.'" State v.Flynt (1980), 63 Ohio St.2d 132, 134 (citations omitted).
 {¶ 43} "A mere showing that another person similarly situated was not prosecuted is not enough; a defendant must demonstrate actual discrimination due to invidious motives or bad faith." State v.Freeman (1985), 20 Ohio St.3d 55, 58. Nor does "the conscious exercise of some selectivity in enforcing a statute fair on its face * * * in and of itself amount to a constitutional violation." Whitehall v.Moling (1987), 40 Ohio App.3d 66, 69 (citation omitted).
 {¶ 44} It is clear from the record that appellants have failed to establish a prima facie case of selective enforcement. Rhonda Fonce testified that the township operates under a complaint-only enforcement policy and that the investigation against appellants was the result of complaints from neighboring landowners. Although appellants pointed *Page 15 
to others within the township operating landscaping businesses in residential districts, Fonce testified that she had not investigated these individuals because no complaints had been received. Furthermore, Fonce also testified that she had filed similar complaints for injunctions against other property owners in the township for similar zoning violations. Accordingly, we cannot conclude that the trial court erred by finding that the zoning ordinance was not selectively enforced as against appellants.
 {¶ 45} For the foregoing reasons, appellants' sole assignment of error is without merit. We affirm the judgment of the Trumbull County Court of Common Pleas.
CYNTHIA WESTCOTT RICE, J., COLLEEN MARY OTOOLE, J., concur.
[1] Ghindia left his position as zoning inspector prior to December 2005, at which time he was replaced by Rhonda J. Fonce, who had served as Assistant Township Zoning Inspector since May of 2000.
[2] Both parties stipulated that the Township's residential designation applied to the subject property. The aforementioned designation appeared in the original township zoning resolution, which was adopted August 19, 1968. The designation for the property remained the same through the adoption of a revised version of the zoning resolution, which was adopted on April 1, 2004. According to testimony from Rhonda Fonce, the amendment to the resolution was enacted in order to specifically allow for a conditional use variance, under certain limited circumstances, for the purpose of allowing landowners to conduct landscaping businesses from properties located in residential zones.
[3] Champion Township Zoning Resolution, Section 6(1) substantially mirrors the requirements of R.C. 519.19, and states that "[a] non-conforming use existing at the time these Resolutions took effect may be continued, except if it is voluntarily discontinued for two (2) years or more, it shall be then abandoned and any further use must be in conformity with the uses permitted in such districts." *Page 1