[Cite as *Cincinnati v. Fourth Natl. Realty, L.L.C.*, 2017-Ohio-1523.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

| | | |
|---|---|---|
| CITY OF CINCINNATI, | : | APPEAL NO. C-160297 |
| | | TRIAL NO. A-1503539 |
| Plaintiff-Appellee, | : | |
| | : | *O P I N I O N.* |
| vs. | | |
| | : | |
| FOURTH NATIONAL REALTY, LLC, | | |
| | : | |
| Defendant-Appellant, | | |
| | : | |
| and | | |
| | : | |
| RACE STREET PARTNERS, LLC, | | |
| | : | |
| Defendant. | : | |

Civil Appeal From: Hamilton County Court of Common Pleas

Judgment Appealed from is: Affirmed in Part, Reversed in Part, and Cause
        Remanded

Date of Judgment Entry on Appeal: April 26, 2017

*Paula Boggs Muething,* City Solicitor, *Marion E. Haynes, III*, Chief Counsel, and
*Mark R. Manning*, Assistant City Solicitor, for Plaintiff-Appellee,

*Dinsmore & Shohl LLP* and *Eric C. Holzapfel,* for Defendant-Appellant.

**CUNNINGHAM, Judge.**

{¶1} Fourth National Realty, LLC, ("Fourth National") appeals from the judgment of the Hamilton County Court of Common Pleas granting injunctive relief, as requested by the city of Cincinnati, that required Fourth National to remove a sign on its building that is in violation of the off-site sign prohibitions in Cincinnati's zoning code. The court also granted summary judgment to the city on Fourth National's selective-enforcement counterclaim, and dismissed for lack of standing Fourth National's counterclaim in which it asked the court to enter a judgment declaring that the off-site sign provisions were unconstitutional because they violated freedom of speech rights guaranteed by the Ohio and federal Constitutions.

{¶2} For the reasons that follow, we affirm the trial court's decision granting injunctive relief to the city where Fourth National failed to present a prima facie case of selective enforcement and failed to show that it could keep its oversized sign in place even if its free-speech challenges were successful. But we reverse the trial court's decision to the extent that it dismissed for lack of standing Fourth National's request for a declaration that the challenged sign provisions were unconstitutional.

{¶3} Fourth National, which represented that it desired a permit to install a smaller sign in the event that the off-site sign provisions were found unconstitutional, established an injury-in-fact and had standing to challenge the provisions as applied to its desired commercial signage. And under the circumstances in the case, Fourth National's allegation that the challenged provisions were overbroad and may cause others not before the court to refrain from constitutionally protected speech was sufficient to meet the standing requirements to

raise a facial claim concerning the alleged restrictions on noncommercial speech. We remand the cause for further proceedings consistent with this opinion and the law.

## I. Background Facts and Procedure

{¶4} This lawsuit involves the installation of a sign on the east face of Fourth National's five-story real property located at 108 W. Third Street in the Downtown Development ("DD") Zoning District of Cincinnati. The existing sign is approximately 45 feet tall, 40 feet wide, and 1,800 square feet in total area, and promotes the products of the John Morrell Company and several local sports teams, none of which are found on the property. It is undisputed that the sign violated the city's zoning code, including Cincinnati Zoning Code 1411-39(a)(1), which expressly prohibits outdoor advertising signs, a type of off-site sign, in the DD Zoning District, and Cincinnati Zoning Code 1427-17, which excludes the DD Zoning District from the list of zoning districts in which off-site signs are permitted. It is also undisputed that the off-site sign had not been allowed by any permit obtained by Fourth National before its installation and that the city had received a complaint about it.

{¶5} The record reflects that the city had previously issued to Fourth National a permit for a much smaller sign (327 square feet) advertising John Morrell products. The city issued the permit based on its understanding that the sign pertained to business conducted in the building, and therefore, qualified as a "building identification sign." Fourth National never installed that approved sign, which John Morrell, a sublessee of part of the premises, but not an occupant of the dilapidated building, had rejected as too small. In May 2015, the city denied Fourth National's request for a variance related to the existing sign. That decision was not appealed.

{¶6} At some point after the denial of the variance, Fourth National requested another permit for the existing sign and confirmed that the copy on the sign did not pertain to the business conducted on the property. The city denied the permit application on July 17, 2015, because:

> [T]he copy does not pertain to the business conducted on the property. Therefore, this is an "off-site sign" as defined in CZC 1427-03-0. It is an "outdoor advertising sign" per the definition in Section 895-1-0. Per CZC 1411-39(a) and 1427-17, outdoor advertising signs are prohibited in the DD district. Therefore, this sign as submitted with the application [] is a prohibited sign.

{¶7} On July 1, 2015, after the variance denial had become final and Fourth National had failed to remove the sign, the city filed this action for, among other things, injunctive relief requiring the removal of the sign because it violated Cincinnati Zoning Code 1427-17 and 1411-39(a), and the permit requirement of Cincinnati Zoning Code 1427-05. Both Cincinnati Municipal Code 1501-27 and R.C. 713.13 authorize a municipality to bring an action for injunctive relief to prevent and terminate violations of the zoning code.

{¶8} The city also sought a temporary restraining order, which was denied after a hearing on July 8, 2015, and the forfeiture of any funds received by Fourth National related to the sign, in a claim that the trial court later disposed of by entering a judgment on the pleadings for Fourth National.

{¶9} The city later amended its complaint to limit the basis of the enforcement action to the violation of the off-site sign prohibition under Cincinnati Zoning Code 1427-17 and the permit requirement of Cincinnati Zoning Code 1427-05, omitting its allegation related to the violation of Cincinnati Zoning Code 1411-

39(a), the outdoor advertising ban.[1]  Fourth National answered and counterclaimed. As pertinent to this appeal, Fourth National alleged that the city was selectively enforcing the zoning code in violation of its equal-protection rights under the Fourteenth Amendment to the United States Constitution, and that the city's off-site sign prohibitions (Cincinnati Zoning Code 1411-39 and 1427-17) violated freedom of speech rights guaranteed by both the federal and Ohio Constitutions.  Fourth National requested dismissal of the city's complaint and a declaration of the unconstitutionality of the off-site sign provisions.

{¶10}  Fourth National moved for summary judgment on the issue of the constitutionality of the off-site sign prohibitions in Cincinnati Zoning Code 1411-39 and 1427-17, arguing that the restrictions were unconstitutional because they defined what is permissible commercial speech based on the content of the message: a sign advertising a business or activity located on the property is allowed but a sign of the same size and appearance advertising a business or activity off-site is prohibited. Fourth National further argued that the off-site sign provisions were constitutionally defective because they favored commercial speech over noncommercial speech.

{¶11}  When the city moved for summary judgment on its claim for injunctive relief, it also moved for summary judgment on Fourth National's selective-enforcement and declaratory-judgment counterclaims.  The city argued that the facts did not support a prima facie case of selective enforcement and that Fourth National lacked standing to challenge the off-site sign prohibitions of the city's code because its sign was in violation of other unchallenged code provisions.

---

[1] The city also filed a second amended complaint to add an unrelated defendant that had installed an illegal banner sign on another nearby property.  That defendant subsequently removed its sign, and the city dismissed its claims against it.

**{¶12}** The trial court ultimately granted summary judgment to the city and ordered Fourth National to remove the illegal sign. The trial court also dismissed Fourth National's declaratory-judgment counterclaim for lack of standing. Fourth National then dismissed its remaining counterclaims and filed this appeal. We granted Fourth National's motion for a stay of the trial court's decision.

## II. Analysis

**{¶13}** On appeal, Fourth National challenges the trial court's judgment in three assignments of error. Because the trial court disposed of the claims by summary judgment, we conduct a de novo review of the trial court's decision, applying the standards set forth in Civ.R. 56. *Comer v. Risko*, 106 Ohio St.3d 185, 2005-Ohio-4559, 833 N.E.2d 712, ¶ 8. A court may grant summary judgment to the moving party only if that party demonstrates: (1) there is no genuine issue as to any material fact; (2) the moving party is entitled to judgment as a matter of law; and (3) it appears from the evidence submitted that reasonable minds can come to but one conclusion and that conclusion is adverse to the nonmoving party, who is entitled to have the evidence construed most strongly in his favor.[2] Civ.R. 56(C).

### A. Fourth National's Selective-Enforcement Counterclaim

**{¶14}** In its third assignment of error, which we address first, Fourth National contends the trial court erred by granting summary judgment to the city because a genuine issue of material fact remains as to whether the city selectively enforced the zoning codes in violation of Fourth National's equal-protection rights. The trial court rejected Fourth National's selective-enforcement counterclaim

---

[2] In their briefs, both parties refer to testimony at the hearing on the temporary restraining order. Although that testimony was transcribed for purposes of this appeal, it was not transcribed for summary judgment purposes in compliance with Civ.R. 56(C), and thus, we do not consider it. *See State v. Ishmail*, 54 Ohio St.2d 402, 377 N.E.2d 500 (1978).

because it concluded that "the record [wa]s devoid of any evidence that parties similarly situated were not prosecuted for the same conduct, i.e., maintaining off-site signs in impermissible zones."

{¶15} As we understand it, Fourth National argues on appeal that it presented evidence of sufficient facts to defeat summary judgment for the city on a "class of one" type of selective-enforcement claim. The Equal Protection Clause is implicated in "class of one" claims "where the plaintiff alleges that [it] has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Village of Willowbrook v. Olech*, 528 U.S. 562, 564, 120 S.Ct. 1073, 145 L.Ed.2d 1060 (2000), cited in *Loesel v. City of Frankenmuth*, 692 F.3d 452, 461 (6th Cir.2012).

{¶16} "Class of one" plaintiffs have a "heavy burden" to "show that they were treated differently than those similarly situated in all material respects," and that " 'the adverse treatment they experienced was so unrelated to the achievement of any combination of any legitimate purposes that the court can only conclude that the government's actions were irrational.' " (Citations and internal quotation marks omitted.) *Loesel* at 462, quoting *Rondingo, L.L.C. v. Twp. of Richmond*, 641 F.3d 673, 682 (6th Cir.2011). The lack of a rational basis may be demonstrated in one of two ways: " 'either by negating every conceivable basis for the government's action or by demonstrating that the challenged actions were motivated by animus or ill-will.' " *Id.*

{¶17} Fourth National's theory for establishing a violation of its equal-protection rights initially required a showing that it was treated differently from others similarly situated in all relevant respects.

{¶18} Concerning summary judgment on the selective-enforcement counterclaim, the city presented the affidavit of Richard Schriewer, the chief building official employed by the city's Department of Building and Inspection, whose responsibilities include supervising the enforcement of the city's code sections at issue in this case. He averred that the city's "enforcement of the zoning code is complaint-driven, meaning that city enforcement officials do not actively search for violations of the zoning code." He explained that an investigation begins once a complaint is received, a procedure that allows the best use of the city's limited resources. Importantly, Schriewer also averred that the city had received a complaint regarding the advertising sign on Fourth National's building, and that the city had investigated and resolved all complaints received relating to the enforcement of "the Sign code and Outdoor Advertising Code."

{¶19} To defeat summary judgment, Fourth National presented the affidavit of Joe Vogel, the president of an advertising company that subleases the second floor of Fourth National's building to the John Morrell Company. Vogel's affidavit refers to attached pictures of signs displayed on a number of buildings and structures located in the downtown district of the city and to related sign permits for those building and structures. Most of the photographed signs are digital video boards on the U.S. Bank Arena, the Cincinnati Reds' Hall of Fame, the Great American Ball Park, Paul Brown Stadium, the Taft Theater, and Macy's Department Store.

{¶20} Vogel's affidavit, however, does not provide the requisite foundation to support his conclusion that the city might have illegal off-site signage in the DD district. And, most importantly, he does not provide any indication that the city had received any complaints about the photographed signs.

{¶21} As argued by the city, the similarly-situated group for purposes of Fourth National's class-of-one claim included any other individual or business maintaining an allegedly illegal off-site sign in the DD district that the city continues to allow, despite a complaint. The lack of a complaint is a material distinction. Thus, we can only conclude from this evidence that the owners of the signage referenced in Vogel's affidavit were not "similarly situated" as Fourth National in relevant respects. *See Stormans, Inc. v. Wiesman*, 794 F.3d 1064, 1083-1084 (9th Cir.2015) (holding that businesses that had complaints filed against them and businesses without complaints were not similarly situated for purposes of establishing evidence of selective enforcement).

{¶22} To save its claim, Fourth National argues that the complaint-driven process that led to the enforcement action was so arbitrary that it resulted in a violation of its equal-protection rights. A complaint-only enforcement policy may result in an unconstitutional system because law enforcement has become "so influenced by private concerns that equal protection is violated." *Whitehall v. Moling*, 40 Ohio App.3d 66, 71, 532 N.E.2d 184 (10th Dist.1987), citing *People v. Acme Mkts., Inc.,* 37 N.Y.2d 326, 372 N.Y.S.2d 590, 334 N.E.2d 555 (N.Y.1975).

{¶23} For instance, in *Acme Markets*, the highest court of New York reversed a conviction for selling prohibited items on Sunday because it found the complaint-only enforcement scheme for the statute to be a violation of the Equal Protection Clause. *Acme Markets* at 331. After reviewing the documented facts, the court, explaining the defect with respect to the complaint-driven scheme, stated:

> Indeed, it is not an exaggeration to say that enforcement has been totally surrendered to private parties and interest groups who without constraint may manipulate the law for purely private purposes. This is

9

an unseemly state of affairs openly inviting discrimination and harassment of one group by another.

*Id.*

{¶24} But Fourth National did not present any evidence to support its claim that the city's policy that led to this enforcement action was similarly defective, such as the manipulation of the law by private parties or interest groups for purely private purposes. And we note that the city has a process where permits are obtained prior to the installation of signs, which further distinguishes this case from *Acme Markets.*

{¶25} Because Fourth National failed to present evidence to support a prima facie selective-enforcement claim, the trial court did not err by entering summary judgment for the city on Fourth National's selective-enforcement counterclaim. Accordingly, we overrule the third assignment of error.

### B. Fourth National's Free-Speech-Based Counterclaim

{¶26} Next we address Fourth National's second assignment of error, in which it contends that the trial court erred by dismissing for lack of standing its counterclaim that sought a declaration that the off-site sign prohibitions were unconstitutional. Fourth National argues that it had standing to challenge the constitutionality of the off-site prohibition provisions and that those provisions were unconstitutional on their face.

{¶27} According to Fourth National, several provisions of the city's zoning code were relevant to its challenge as set forth in its counterclaim. Cincinnati Zoning Code 1427-17, which only permits off-site signs in certain zoning districts in the city of Cincinnati, provides that "Off-Site Signs are permitted only in the CC-M, CC-A, CG-A, MG, and ME zoning districts and must be displayed in compliance with Chapter 895, Outdoor Advertising Signs, of the Cincinnati Municipal Code." For

purposes of Cincinnati Zoning Code 1427-17, an off-site sign is a sign that directs "attention to a business, commodity, service, person, or entertainment conducted, sold or offered elsewhere than on the premises where the sign is maintained, including an Outdoor Advertising Sign as defined and regulated in Chapter 895 of the Cincinnati Municipal Code." Cincinnati Zoning Code 1427-03-O.

{¶28} Cincinnati Zoning Code 1411-39(a) provides, in relevant part: "Prohibited signs. The following are prohibited in the DD District: Outdoor advertising signs."

{¶29} An "outdoor advertising sign" is defined as follows:

[A] sign or graphic image painted or affixed to the ground or structure, visible from any street, highway or other public way or park, displaying a message or promoting goods, products, services, events, activities, ideas, opinions, and candidates for public office, except:

(a) Signs primarily intended to promote the sale of goods, products or services on the same premises as the sign. Provided, however, outdoor advertising sign shall include any sign promoting the sale of goods, products or services on the same premises as the sign but which are primarily intended to promote sale off premises.

(b) Signs primarily intended to promote events or activities taking place on the same premises as the sign.

(c) Directional or traffic control signs posted by a public authority.

(d) Signs advertising the sale or lease of the property on which they are located.

(e) Public service signs devoted to providing information such as time, weather, or news. Provided, however, such signs shall not be used to advertise the sale of goods, products or services.

(f) Political signs no more than 32 square feet in area for a candidate or issue to be voted upon at a general, primary, or special public election, displayed no more than 90 days prior to the election or ten days thereafter.

(g) Signs within a public right-of-way displayed pursuant to a revocable street privilege or an agreement with the city.

Signs without a permanent structural support displayed less than ten days within a calendar year.

(h) Signs less than 4 square feet in face area.

Cincinnati Zoning Code 895-1-0.

{¶30} Ohio's general law on standing requires plaintiffs to show that they "suffered (1) an injury that is (2) fairly traceable to the defendant's allegedly unlawful conduct, and is (3) likely to be redressed by the requested relief." *Moore v. City of Middletown*, 133 Ohio St.3d 55, 2012-Ohio-3897, 975 N.E.2d 977, ¶ 22, citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992). In addition to these minimum requirements of constitutional standing, courts apply "prudential standing requirements," one of which requires that a party generally may assert only his or her rights and cannot raise the claims of third parties. *Prime Media, Inc. v. City of Brentwood*, 485 F.3d 343, 348 (6th Cir.2007), citing *Warth v. Seldin*, 422 U.S. 490, 500, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975).

{¶31} Similar to the grant of summary judgment, we review a dismissal of a claim for lack of standing de novo. *Moore* at ¶ 20.

{¶32} We first note that the trial court found, when addressing the redressability prong of constitutional standing, that Fourth National's existing sign was undisputedly in violation of the off-site sign prohibitions of Cincinnati Zoning Code 1411-39(a) and 1427-17, it exceeded the size and height limitations for any sign allowed on the building, and it lacked an appropriate and affixed permit. The trial court also found Fourth National could not meet the traditional standing requirement that its injury was redressable through litigation.

{¶33} In analyzing the issue, the trial court believed that Fourth National was challenging only the off-site sign prohibition in Cincinnati Zoning Code 1411-39(a)(1), and not the prohibition in Cincinnati Zoning Code 1427-17. The confusion stemmed from Fourth National's citation only to Cincinnati Zoning Code 1411-39 in its first counterclaim. The better practice would have been for Fourth National to specifically mention Cincinnati Zoning Code 1427-17 in its counterclaim. But we are satisfied that Fourth National sought a declaration that both provisions were unconstitutional on free-speech grounds, both facially and as applied, and any defect in the body of the counterclaim had been cured. Our conclusion is based on the language of the answer—in which Fourth National challenged the constitutionality of the off-site sign prohibition provisions that supported the enforcement action—and the first counterclaim, as well as the content of the summary judgment briefing and the parties' arguments on appeal.

{¶34} That said, the trial court's conclusion on standing with respect to Fourth National's free-speech challenge as a defense to the enforcement action was correct. The trial court was correct in not addressing the free-speech challenge when determining the city's claim for injunctive relief because Fourth National could not meet the redressability requirement of standing for its attack on the provisions as

applied to the existing sign. *See Harp Advertising Illinois v. Village of Chicago Ridge*, 9 F.3d 1290, 1291 (7th Cir.1993). As established by the city, the installed sign greatly exceeded the size restrictions of any sign allowed in the DD district regardless of its exact classification.

{¶35} Fourth National contends that it could avoid the size limitations imposed on the sign by seeking a variance once off-site signage is allowed. But Fourth National unsuccessfully pursued a variance related to the existing sign. The city's May 2015 decision denying that variance request was not appealed and is final. The relitigation of a variance for this sign is now barred by res judicata. *See Grava v. Parkman Twp.*, 73 Ohio St.3d 379, 653 N.E.2d 226 (1995).

{¶36} Under these facts, the litigation of the free-speech claim in the enforcement action would be "irrelevant." *Harp* at 1291. Thus, because Fourth National failed to show that its injury related to the existing sign could be redressed in the enforcement action, Fourth National lacked standing to pursue its free-speech-based constitutional challenge to save that sign. *See id.*

{¶37} But Fourth National argues that the removal of the existing sign is not its only injury caused by the provisions. Fourth National represents on appeal, as it did in the trial court, that it would install a smaller-but-legally-sized sign advertising the off-site copy if it could obtain a favorable decision on its challenge to the off-site sign provisions. We pause before accepting this representation because Fourth National previously rejected a permit to install a 327 square-foot sign. But we accept it because the record reflects that if the off-site sign prohibition provisions are found to be unconstitutional, the code could allow for an off-site outdoor advertising sign not to exceed 672 square feet, which is twice the size of the previously rejected sign.

{¶38} Accepting the representation, if Fourth National were to succeed on the merits of its free-speech challenge as applied to its desired commercial signage, resulting in a declaration that the provisions were unconstitutional and void as applied, Fourth National would likely be able to obtain a permit for and install the sign it has represented its intent to install. We are mindful too that the city's order denying the permit for the existing sign cited only the content restrictions in the off-site sign prohibition provisions, and not size restrictions. Considering the favorable consequence for Fourth National if the off-site sign prohibition provisions are declared unconstitutional, we conclude that the trial court erred in concluding that Fourth National had not shown any redressable injury. *See Lamar Advertising of Penn, LLC v. Town of Orchard Park*, 356 F.3d 365, 375 (2d Cir.2004). *See also Harp*, 9 F.3d at 1291 (suggesting that a party would have a sufficiently redressable injury to challenge a zoning code if it had expressed its intent to install a size-appropriate sign in the event that it prevailed in its challenge to the off-premises sign ban). As a result, Fourth National meets the minimum requirements of constitutional standing to bring this as-applied claim with respect to the desired sign.

{¶39} The more difficult question is whether Fourth National can proceed on a facial challenge to the off-site prohibition provisions that implicate both noncommercial and commercial speech. Fourth National asserts standing under the overbreadth doctrine. This doctrine serves as an exception to the prudential standing requirement and allows a party to bring a facial challenge to a provision of a law that causes the party an injury, regardless of whether the provision's regulation of the party's conduct in particular was constitutional. *See Tipp City v. Dakin*, 186 Ohio App.3d 558, 2010-Ohio-1013, 929 N.E.2d 484, ¶ 42 (2d Dist.), citing *New York v. Ferber*, 458 U.S. 747, 767, 102 S.Ct. 3348, 73 L.Ed.2d 1113 (1982). This exception

15

is justified "by the recognition that free speech may be inhibited almost as easily by the potential or threatened use of power as by the actual exercise of that power." *N.Y. State Club Assn. v. City of New York*, 487 U.S. 1, 11, 108 S.Ct. 2225, 101 L.Ed.2d 1 (1988); *see also XXL of Ohio, Inc. v. City of Broadview Hts.*, 341 F.Supp.2d 765, 779 (N.D.Ohio 2004).

{¶40} According to Fourth National, the same Cincinnati Zoning Code provisions prohibiting off-site speech that it challenges due to their effect on its own commercial speech rights are substantially overbroad and actually inhibit the protected speech of third parties. Fourth National argues the overbroad restrictions inhibit both noncommercial and commercial speech, where they contain content-based restrictions that provide a greater degree of protection to certain forms of commercial speech than noncommercial speech, and they provide a greater degree of protection for on-site versus off-site advertising that does not pass the four-part-intermediate-scrutiny test set forth in *Cent. Hudson Gas & Elec. v. Public Serv. Comm.*, 447 U.S. 557, 100 S.Ct. 2343, 65 L.Ed.2d 341 (1980).

{¶41} Fourth National, however, cannot present a facial challenge on overbreadth grounds to assert the commercial-speech interests of others. "[T]he overbreadth doctrine does not apply to commercial speech." *Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 497, 102 S.Ct. 1186, 71 L.Ed.2d 362 (1982). *See also XXL* at 779 ("[t]he overbreadth doctrine is inapplicable when the entire scope of an ordinance restricts only commercial speech.").

{¶42} But if an ordinance restricts both types of speech, "a party whose purely commercial speech has been sanctioned may assert the non-commercial speech rights of others by using the overbreadth doctrine" when it brings its as-

applied challenge. *XXL*, 341 F.Supp.2d at 779, quoted in *Dakin*, 186 Ohio App.3d 558, 2010-Ohio-1013, 929 N.E.2d 484, at ¶ 42.

{¶43} The city argues that the off-site sign prohibitions are not overbroad because other provisions of the city's zoning code allow sufficient protection for noncommercial speech. But this argument addresses the merits of the facial challenge, and not Fourth National's standing to bring that challenge.

{¶44} Ultimately, the prohibitions on off-site commercial advertising may be unenforceable if the challenged provisions are found unconstitutional due to the impact on noncommercial speech. Thus, we hold that under these circumstances, Fourth National has standing to challenge the off-site sign provisions as applied to a smaller commercial sign that it represents it wishes to install, and also facially to the extent that Fourth National claims those same provisions unlawfully restrict protected noncommercial speech. As a result, we sustain the second assignment of error.

### C. City's Claim for Injunctive Relief

{¶45} Finally, in its first assignment of error, Fourth National argues that the trial court erred by granting summary judgment for the city on its claim for injunctive relief. In support of this assignment of error, Fourth National relies upon arguments that it made in support of its other two assignments of error. But for reasons previously discussed, we have already upheld the trial court's determinations that Fourth National failed to present a prima facie case of selective enforcement, that Fourth National's free-speech-based-constitutional arguments are irrelevant to the disposition of the city's enforcement action for the removal of the existing sign, and that Fourth National's existing sign is in violation of the zoning code.

{¶46} Consistent with our prior analysis, we reject Fourth National's arguments when evaluating the propriety of the trial court's entry of summary judgment for the city on its claim for injunctive relief. Because Fourth National failed to demonstrate the error assigned, we overrule the first assignment of error.

## III. Conclusion

{¶47} We affirm the trial court's judgment in part and reverse it in part. We affirm that portion of the trial court's judgment in which it properly ordered Fourth National to remove its existing oversized sign advertising off-site products and teams. But the trial court erred by dismissing for lack of standing that part of Fourth National's counterclaim seeking a declaration that the city's off-site sign prohibition provisions are unconstitutional as applied to Fourth National's desired legally-sized-off-site sign, and on their face to the extent they restrict noncommercial speech. Finding this ruling in error, we reverse that portion of the trial court's judgment and remand this cause for the consideration of these issues in accordance with the law and this opinion.

Judgment affirmed in part, reversed in part, and cause remanded.

**MOCK, P.J.,** and **ZAYAS**, **J.**, concur.

Please note:

The court has recorded its own entry on the date of the release of this opinion.