[Cite as *Cincinnati v. Fourth Natl. Realty, L.L.C.*, 2019-Ohio-1868.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

|  |  |  |
|---|---|---|
| CITY OF CINCINNATI, | : | APPEAL NOS. C-180156 |
|  |  | C-180174 |
| Plaintiff-Appellee/Cross-Appellant, | : | TRIAL NO. A-1503539 |
|  | : | *O P I N I O N.* |
| vs. | : |  |
| FOURTH NATIONAL REALTY, LLC, | : |  |
| Defendant-Appellant/Cross-Appellee. | : |  |
|  | : |  |

Civil Appeals From:  Hamilton County Court of Common Pleas

Judgment Appealed From Is:  Affirmed in Part, Reversed in Part, and Cause Remanded

Date of Judgment Entry on Appeal:  May 15, 2019


*Paula Boggs Muething*, City Solicitor, *Marion E. Haynes, III*, Chief Counsel, and *Mark R. Manning*, Assistant City Solicitor, for Plaintiff-Appellee/Cross-Appellant,

*Holzapfel Law, LLC*, and *Eric C. Holzapfel*, for Defendant-Appellant/Cross-Appellee.

**MYERS, Presiding Judge.**

{¶1} This is the second appeal in a lawsuit between plaintiff-appellee/cross-appellant the city of Cincinnati and defendant-appellant/cross-appellee Fourth National Realty, LLC, ("Fourth National") concerning Fourth National's placement of an off-site advertising sign on its real property located at 108 W. Third Street.

{¶2} Both the city and Fourth National have appealed from the trial court's decision granting summary judgment to the city on Fourth National's declaratory-judgment counterclaim. The grant of summary judgment was based on the court's determination that amendments to relevant provisions of the city's zoning code regarding off-site signs, contained in Ordinance No. 372-2017, had rendered the counterclaim moot. In its direct appeal, Fourth National argues in a single assignment of error that the trial court erred in determining that its counterclaim was moot. In a cross-appeal, the city argues that the trial court erred in permitting Fourth National to invoke its jurisdiction and that, if Fourth National's counterclaim was not mooted by Ordinance No. 372-2017, the trial court erred in failing to grant the city summary judgment on the merits of the counterclaim.

{¶3} For the reasons that follow, we find that the trial court's jurisdiction was properly invoked and that the court correctly determined that the amendments in Ordinance No. 372-2017 rendered moot Fourth National's facial challenge to the zoning code provisions on the grounds that they were overbroad and impermissibly restricted noncommercial speech. But we find that the trial court erred in determining that the amendments rendered moot Fourth National's as-applied challenge to the zoning code provisions on the grounds that they impermissibly imposed a content-based restriction depending on whether a commercial sign was classified as off-site or on-site.

## 1. PROCEDURAL BACKGROUND

### A. Facts

{¶4}   In order to analyze the issues in this appeal, we must first examine the history and procedural posture of the case.  Fourth National is the owner of a building located at 108 W. Third Street in the Downtown Development ("DD") Zoning District of Cincinnati.  Fourth National, without first obtaining a required permit, installed a sign on its property advertising products sold by the John Morell Company, products sold by Nathan's hotdogs, and several local sports teams.  Although the John Morell Company sublet a portion of the building, none of the companies or sports teams advertised on the sign conducted business on the property or sold their products or services at the property.  The sign was an off-site sign, and was indisputably in violation of both Cincinnati Zoning Code ("C.Z.C.") 1411-39(a)(1) and 1427-17, which contained prohibitions on off-site and outdoor advertising signs in the DD District.

{¶5}   Specifically, C.Z.C. 1411-39(a) prohibited "outdoor advertising signs," among other things, in the DD District.  And C.Z.C. 1427-17 prohibited "off-site signs" in the DD District.

{¶6}   The zoning code, at the time that the sign was installed, defined an off-site sign as a "sign directing attention to a business, commodity, service, person, or entertainment conducted, sold or offered elsewhere than on the premises where the sign is maintained, including an Outdoor Advertising Sign as defined and regulated in Chapter 895 of the Cincinnati Municipal Code."  Former C.Z.C. 1427-03-O.  Pursuant to former Cincinnati Municipal Code ("C.M.C.") 895-1-0, an outdoor advertising sign included:

> [A] sign or graphic image painted on or affixed to the ground or
> structure, visible from any street, highway or other public way or park,

displaying a message or promoting goods, products, services, events, activities, ideas, opinions, and candidates for public office, except:

(a) Signs primarily intended to promote the sale of goods, products or services on the same premises as the sign. Provided, however, outdoor advertising sign shall include any sign promoting the sale of goods, products or services on the same premises as the sign but which are primarily intended to promote sale off premises.

(b) Signs primarily intended to promote events or activities taking place on the same premises as the sign.

It also excluded certain public service signs and certain political signs.

{¶7}   Because Fourth National's sign was in violation of various provisions of the zoning code, the city filed an action for injunctive relief against Fourth National. In an amended complaint, the city requested a preliminary and permanent injunction requiring Fourth National to remove the sign because it was an off-site sign in the DD Zoning District, in violation of C.Z.C. 1427-17.[1]

{¶8}   Fourth National answered the city's complaint and filed counterclaims. In its first counterclaim, Fourth National sought a declaration that the city's off-site and outdoor advertising zoning prohibition provisions (C.Z.C. 1411-39 and 1427-17) were unconstitutional because they violated Fourth National's right to free speech. Fourth National's remaining counterclaims alleged that the city's selective enforcement of the zoning code denied it equal protection of its rights under the law, that enforcement of C.Z.C. 1411-39(a)(1) was in violation of 42 U.S.C. 1983, and that the city tortiously interfered with Fourth National's prospective and existing business and contractual relationships. It sought damages on these last three counterclaims.

---

[1] The complaint also sought injunctive relief on the grounds that Fourth National had installed the sign without first obtaining a permit. As explained in *Cincinnati v. Fourth Natl. Realty, LLC*, 2017-Ohio-1523, 88 N.E.3d 1278 (1st Dist.), the city had issued Fourth National a permit for a smaller sign based on its belief that the sign qualified as a "building identification sign." But Fourth National never installed that approved sign because John Morrell had rejected it as too small. Fourth National had then requested a variance related to the existing sign, which the city denied before initiating this lawsuit.

{¶9}   Fourth National filed a motion for partial summary judgment on its first counterclaim that sought a declaration that C.Z.C. 1411-39 and 1427-17 were unconstitutional.  The city moved for summary judgment on its complaint and on Fourth National's declaratory-judgment and selective-enforcement counterclaims.

### B.  The Trial Court's Initial Decision

{¶10}  As relevant to the issues before us, the trial court, in the first round of this case, held that Fourth National lacked standing to challenge the constitutionality of the city's off-site sign provisions because the sign was in violation of other zoning code provisions, including a provision regulating the permissible size and height of signs.  And after determining that the city was entitled to injunctive relief because Fourth National's sign was an off-site sign in a DD zoning district in violation of C.Z.C. 1427-17, and that the city had not violated Fourth National's equal-protection rights through selective enforcement of the zoning code, the court granted the city's motion for summary judgment and ordered Fourth National to remove the sign. Fourth National dismissed its remaining counterclaims and filed an appeal.

### C.  The First Appeal

{¶11}  On appeal, we affirmed the trial court's judgment in all respects except for its determination that Fourth National lacked standing to challenge the city's off-site sign prohibitions.  *Cincinnati v. Fourth Natl. Realty, LLC*, 2017-Ohio-1523, 88 N.E.3d 1278 (1st Dist.).  As to standing, we held that the trial court correctly determined that Fourth National lacked standing to pursue its free-speech-based constitutional challenge to save the sign that the trial court had ordered removed because that sign was in violation of zoning provisions restricting the size of signs. *Id.* at ¶ 34-36.  But we further held that:

But Fourth National argues that the removal of the existing sign is not its only injury caused by the provisions. Fourth National represents on appeal, as it did in the trial court, that it would install a smaller-but-legally-sized sign advertising the off-site copy if it could obtain a favorable decision on its challenge to the off-site sign provisions.

* * *

Accepting the representation, if Fourth National were to succeed on the merits of its free-speech challenge as applied to its desired commercial signage, resulting in a declaration that the provisions were unconstitutional and void as applied, Fourth National would likely be able to obtain a permit for and install the sign it has represented its intent to install. We are mindful too that the city's order denying the permit for the existing sign cited only the content restrictions in the off-site sign prohibition provisions, and not size restrictions. Considering the favorable consequence for Fourth National if the off-site sign prohibition provisions are declared unconstitutional, we conclude that the trial court erred in concluding that Fourth National had not shown any redressable injury. *See Lamar Advertising of Penn, LLC v. Town of Orchard Park*, 356 F.3d 365, 375 (2d Cir.2004). *\* \* \** As a result, Fourth National meets the minimum requirements of constitutional standing to bring this as-applied claim with respect to the desired sign.

*Id.* at ¶ 37-38.

{¶12} We then proceeded to consider whether Fourth National had standing to bring a facial challenge to the off-site sign provisions concerning their impact on noncommercial speech. As this court explained, Fourth National had argued that it had standing to mount an overbreadth challenge to these provisions:

6

According to Fourth National, the same Cincinnati Zoning Code provisions prohibiting off-site speech that it challenges due to their effect on its own commercial speech rights are substantially overbroad and actually inhibit the protected speech of third parties. Fourth National argues the overbroad restrictions inhibit both noncommercial and commercial speech * * *.

*Id.* at ¶ 40.

{¶13} We held that a facial challenge could not be presented on overbreadth grounds to assert the commercial speech interests of third parties, recognizing that " '[t]he overbreadth doctrine does not apply to commercial speech' ". *Id.* at ¶ 41, quoting *Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 497, 102 S.Ct. 1186, 71 L.Ed.2d 362 (1982). But we further held that if an ordinance restricts both commercial and noncommercial speech, a party who has only had their commercial speech restricted may use the overbreadth doctrine to assert the noncommercial speech rights of others when it brings an as-applied challenge. *Id.* at ¶ 42. We ultimately concluded that Fourth National had standing to facially challenge the off-site sign provisions "to the extent that Fourth National claims those same provisions unlawfully restrict protected noncommercial speech." *Id.* at ¶ 44.

{¶14} Having affirmed the trial court's grant of summary judgment to the city on its claim for injunctive relief and on Fourth National's counterclaim alleging selective enforcement of the zoning provisions, we remanded the case for the trial court to consider Fourth National's remaining counterclaim and determine whether "the city's off-site sign prohibition provisions are unconstitutional as applied to Fourth National's desired legally-sized-off-site sign, and on their face to the extent they restrict noncommercial speech." *Id.* at ¶ 47.

### D. Ordinance No. 372-2017

{¶15} While the case was on remand, the city passed Ordinance No. 372-2017. The ordinance amended various provisions in the zoning and municipal codes relating to the city's regulation of off-site and noncommercial signs. It did not amend C.Z.C. 1411-39 or 1427-17. But it did amend the definition of an outdoor advertising sign to reflect that such a sign "shall have the same meaning as 'Off-Site Sign,' as that term is defined in Section 1427-03-O." C.M.C. 895-1-O.

{¶16} And the definition of off-site sign in C.Z.C. 1427-03-O was amended to mean a:

> Commercial Sign (i) that proposes or promotes a commercial transaction to be conducted on a premises other than the premises on which the sign is located; or (ii) directs attention to a good, product, commodity, business, service, event, or other object that serves as the basis of a commercial transaction that is not conducted on the same premises as the premises on which the sign is located.

Thus, the off-site prohibitions apply only to certain commercial speech.

### E. City's Second Motion for Summary Judgment

{¶17} On remand, Fourth National filed a motion to supplement its answer with additional counterclaims, which the trial court denied.

{¶18} The city filed a second motion for summary judgment. It argued that the trial court lacked subject-matter jurisdiction to consider Fourth National's counterclaim because Fourth National had failed to serve the Ohio Attorney General with notice of its suit, as was required by R.C. 2721.12; that Fourth National lacked standing to assert its free-speech claim because it did not own the wall on which the sign was installed and would not suffer any legal injury if the zoning code provisions were enforced; that Fourth National's counterclaim was rendered moot by Ordinance

No. 372-2017 and no longer presented an actual, justiciable controversy; and that the off-site sign prohibitions were constitutional.

{¶19} After the city filed its motion for summary judgment, Fourth National served the Attorney General with notice of its lawsuit. Counsel for Fourth National filed an affidavit stating that he had received a letter from the Attorney General's office indicating that the Attorney General had received notice of the lawsuit and had elected not to participate in the litigation. The letter was attached to counsel's affidavit.

{¶20} The trial court issued a decision determining that it had acquired subject-matter jurisdiction because R.C. 2721.12 did not require service on the Attorney General at the inception of the lawsuit and because the city was not prejudiced by the delayed service on the Attorney General, who had elected not to participate in the action. It further found that this court's prior determination that Fourth National had standing to challenge the off-site sign prohibitions was the law of the case, and, in the alternative, that Fourth National had standing because the wall on which the sign was installed was a common wall between Fourth National and the neighboring property owner, thus giving Fourth National a real legal interest. The court then found that Ordinance No. 372-2017 had rendered Fourth National's counterclaim moot and that the case no longer presented an actual, justiciable controversy. It stated:

> Fourth National's declaratory judgment claim challenges Cincinnati Municipal Code Sections 1411-39(a) and 1427-17. However, those code sections have since been replaced by Ordinance 372-2017. The ordinance replaced key terms used in the old code sections including the definitions of "outdoor advertising sign" and "off-site sign." Cincinnati Ordinance No. 372-2017. Additionally, the ordinance amended and added new provisions to the City's sign code that clarifies where off-site signs may be installed. These legislative

amendments have changed the legal effect of the City's sign code. Consequently, there is no longer an active controversy over the provisions challenged by Fourth National because the recent changes rendered the old provisions defunct.

The trial court declined to consider the constitutionality of the zoning code provisions based on its mootness determination. It then granted the city's motion for summary judgment, entered final judgment for the city, and dismissed Fourth National's counterclaim.

{¶21} Both Fourth National and the city appeal the trial court's judgment.

## 2. STANDARD OF REVIEW

{¶22} We review a trial court's grant of summary judgment de novo. *Grafton v. Ohio Edison Co.,* 77 Ohio St.3d 102, 105, 671 N.E.2d 241 (1996). Summary judgment is appropriately granted when there exists no genuine issue of material fact, the party moving for summary judgment is entitled to judgment as a matter of law, and the evidence, when viewed in favor of the nonmoving party, permits only one reasonable conclusion that is adverse to that party. *State ex rel. Howard v. Ferreri,* 70 Ohio St.3d 587, 589, 639 N.E.2d 1189 (1994).

{¶23} But where a trial court has resolved an action by determining that no justiciable controversy exists, this court employs a different standard of review. *Waldman v. Pitcher*, 2016-Ohio-5909, 70 N.E.3d 1025, ¶ 15 (1st Dist.). A trial court's justiciability determination is reviewed for an abuse of discretion. *Id.* at ¶ 17; *Arnott v. Arnott*, 132 Ohio St.3d 401, 2012-Ohio-3208, 972 N.E.2d 586, ¶ 13. An abuse of discretion connotes that a court's decision was unreasonable, arbitrary, or unconscionable. *State v. Martin*, 151 Ohio St.3d 470, 2017-Ohio-7556, 90 N.E.3d 857, ¶ 27, citing *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983). A decision is unreasonable where it is not supported by a sound reasoning process. *Pitcher* at ¶ 17.

### 3. DIRECT APPEAL—MOOTNESS

{¶24} In its sole assignment of error, Fourth National argues that the trial court erred in granting the city's motion for summary judgment and dismissing its counterclaim. It contends that because Ordinance No. 372-2017 did not amend C.Z.C. 1411-39 or 1427-17, the two provisions that it challenges as unconstitutional, the ordinance did not render its counterclaim moot.

{¶25} The subject-matter jurisdiction of common pleas courts is limited to justiciable matters. *Id.* at ¶ 20; Ohio Constitution, Article IV, Section 4(B). A justiciable matter indicates "the existence of an actual controversy, a genuine dispute between adverse parties." *Id.* at ¶ 21, citing *State ex rel. Barclays Bank PLC v. Hamilton Cty. Court of Common Pleas,* 74 Ohio St.3d 536, 542, 660 N.E.2d 458 (1996). In a declaratory-judgment action, a justiciable controversy exists "when there is a genuine dispute between parties having adverse legal interests of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Id.*

{¶26} In this case, the trial court determined that no justiciable controversy existed because the zoning provisions challenged by Fourth National had been rendered "defunct" by Ordinance No. 372-2017. In making this determination, the trial court relied on two federal cases that addressed a similar argument regarding mootness.

{¶27} *Bench Billboard Co. v. Cincinnati*, 717 F.Supp.2d 771 (S.D.Ohio 2010), involved a constitutional challenge to the city of Cincinnati's regulations regarding advertising benches. *Id.* at 773. The plaintiff in that case, Bench Billboard Company ("Bench Billboard"), had argued that C.M.C. 723-20 and C.M.C. Chapter 895 were unconstitutional. *Id.* at 776. During the course of the litigation, the city passed Ordinance No. 363-2009, which contained amendments to C.M.C. Chapter 723, including the deletion of C.M.C. 723-20. *Id.* at 777. C.M.C. Chapter 895 was not amended by the ordinance.

{¶28} The city filed a motion to dismiss, arguing that the amendments in Ordinance No. 363-2009 had rendered Bench Billboard's claims moot. The district court held that Bench Billboard's challenge to C.M.C. Chapter 895 was not moot because the ordinance had not altered any provision in that chapter. *Id.* at 778. But it found Bench Billboard's challenge to C.M.C. 723-20 to be moot because the amendments in Ordinance No. 363-2009 had rewritten C.M.C. Chapter 723 and the statutory language that Bench Billboard had challenged was defunct. *Id.* at 780.

{¶29} The Sixth Circuit affirmed the district court in *Bench Billboard Co. v. Cincinnati*, 675 F.3d 974 (6th Cir.2012). It recognized that "[l]egislative repeal or amendment of a challenged statute while a case is pending on appeal usually eliminates [the] requisite case-or-controversy because a statute must be analyzed by the ... court in its present form." *Id.* at 981, quoting *Kentucky Right to Life, Inc. v. Terry,* 108 F.3d 637, 644 (6th Cir.1997).

{¶30} In this case, the trial court generally determined that Ordinance No. 372-2017 had rendered Fourth National's declaratory-judgment counterclaim moot. But, as specified by this court in the parties' first appeal, Fourth National had two separate constitutional challenges pending in its declaratory-judgment counterclaim: a facial overbreadth challenge on the grounds that the off-site sign prohibition provisions unlawfully restricted protected noncommercial speech, and an as-applied challenge alleging that the provisions, as applied to a proposed legally-sized-off-site sign, imposed a content-based restriction depending on whether a commercial sign was classified as off-site or on-site. We separately consider whether Ordinance No. 372-2017 rendered either of these challenges moot.

### A. Facial Overbreadth Challenge

{¶31} Fourth National argued that C.Z.C. 1411-39 and 1427-17 were unconstitutional on their face because they unlawfully restricted protected noncommercial speech.

12

{¶32} C.Z.C. 1411-39(a), which was not amended by the city, provides that "[t]he following signs are prohibited in the DD District: (1) Outdoor advertising signs[;] (2) Flashing signs * * * [; and] (3) Portable signs." And C.Z.C. 1427-17, which also was not amended, provides that "Off-Site Signs are permitted only in the CC-M, CC-A, CG-A, MG, and ME zoning districts and must be displayed in compliance with Chapter 895, Outdoor Advertising Signs, of the Cincinnati Municipal Code."

{¶33} As explained, while Ordinance No. 372-2017 did not amend either C.Z.C. 1411-39 or 1427-17, it did amend the definitions of an "off-site sign" and an "outdoor advertising sign." Previously, the definition of an outdoor advertising sign included both commercial and noncommercial signs, although certain exemptions were included. And previously, the definition of an off-site sign included both as well.

{¶34} The definition of outdoor advertising sign, contained in C.M.C. 895-1-O, was amended to reflect that such a sign "shall have the same meaning as 'Off-Site Sign,' as that term is defined in Section 1427-03-O," thus making no distinction anymore between what was an off-site sign and what was an outdoor advertising sign.

{¶35} The definition of an off-site sign, contained in C.Z.C. 1427-03-O, was amended to mean a:

> ***Commercial*** Sign (i) that proposes or promotes a **commercial** transaction to be conducted on a premises other than the premises on which the sign is located; or (ii) directs attention to a good, product, commodity, business, service, event, or other object that serves as the basis of a **commercial** transaction that is not conducted on the same premises as the premises on which the sign is located.

(Emphasis added.)

{¶36} Following the enactment of Ordinance No. 372-2017, both "outdoor advertising sign" and "off-site sign" solely refer to commercial signs, whereas the

former versions of these definitions encompassed both commercial and noncommercial signs. Consequently, only commercial signs are restricted by the prohibitions on off-site signs and outdoor advertising signs found in C.Z.C. 1411-39 and 1427-17. All noncommercial signs are now included in in the definition of an on-site sign. *See* C.Z.C. 1427-03-O1.

{¶37} Because the amended provisions no longer restrict protected noncommercial speech, and because Fourth National's overbreadth challenge was based on this distinction, its argument is moot; that is, it is based on statutory language that is now defunct. *See Bench Billboard Co.*, 717 F.Supp.2d at 780. Consequently, the trial court did not err in finding that Fourth National's overbreadth challenge to the constitutionality of these provisions was rendered moot by the amendments in Ordinance No. 372-2017.

### B. As-Applied Challenge

{¶38} We now consider Fourth National's as-applied challenge to the off-site sign prohibition provisions, in which it argues that, as applied to a proposed legally-sized-off-site sign, the provisions impose a content-based restriction depending on whether a commercial sign promotes an activity on or off the site.

{¶39} The zoning code now defines an on-site sign as:

(i) a Noncommercial Sign: (ii) a Commercial Sign that proposes or promotes a commercial transaction to be conducted on the same premises as the premises on which the sign is located; or (iii) a Commercial Sign that directs attention to a good, product, commodity, business, service, event, or other object that serves as the basis of a commercial transaction conducted on the same premises as the premises on which the sign is located.

{¶40} Prior to the enactment of Ordinance No. 372-2017, an off-site sign was defined as "a sign directing attention to a business, commodity, service, person, or

entertainment conducted, sold or offered elsewhere than on the premises where the sign is maintained, including an Outdoor Advertising Sign as defined and regulated in Chapter 895 of the Cincinnati Municipal Code."

{¶41} Thus, as to commercial signs, the distinction between on and off-site remains the same.

{¶42} Fourth National's proposed sign would indisputably advertise products not sold on the premises and would qualify as an off-site sign both before and after the enactment of Ordinance No. 372-2017. Consequently, the sign remained in violation of C.Z.C. 1411-39 and 1427-17. The restriction as applied to Fourth National remained unaltered by the ordinance and prohibited off-site signs while allowing on-site signs, which, according to Fourth National is an impermissible content-based prohibition. We therefore hold that Fourth National's as-applied challenge was not rendered moot by Ordinance No. 372-2017, and that the trial court erred in determining otherwise.

### C. Damages Claims

{¶43} Fourth National additionally argues that its damages claim was not rendered moot by Ordinance No. 372-2017. It argues that it is still entitled to damages stemming from its loss of income from the lease with John Morrell when it was forced to remove the installed sign pursuant to the injunction obtained by the city.

{¶44} But Fourth National has no claim for damages pending. It did not seek damages in its declaratory-judgment counterclaim. And none of its counterclaims that had sought damages remain pending: the city was granted summary judgment on the selective-enforcement counterclaim and the remaining two counterclaims were voluntarily dismissed by Fourth National. Although Fourth National sought to supplement its counterclaims following this court's remand, the trial court denied that motion.

15

### D. Direct Appeal—Conclusion

{¶45} In summary, we conclude that Ordinance No. 372-2017 rendered moot Fourth National's facial overbreadth challenge, but not its as-applied challenge to the off-site sign prohibition provisions. Fourth National's assignment of error is sustained in part and overruled in part.

## 4. CROSS-APPEAL

{¶46} The city raises two assignments of error in its cross-appeal, arguing that that the trial court erred in permitting Fourth National to invoke the court's jurisdiction, and that, should this court determine that the passage of Ordinance No. 372-2017 had not mooted Fourth National's counterclaim, the trial court erred in failing to grant summary judgment to the city on the merits of the counterclaim.

### A. R.C. 2721.12

{¶47} In its first assignment of error, the city argues that the trial court lacked subject-matter jurisdiction to consider Fourth National's declaratory-judgment counterclaim because Fourth National failed to serve the Attorney General at the inception of the case in accordance with R.C. 2721.12.

{¶48} As explained above, the city challenged Fourth National's compliance with R.C. 2721.12 in its second motion for summary judgment. After that motion was filed, Fourth National served the Attorney General with a copy of its answer and counterclaim, and the Attorney General elected not to participate in the action. The trial court held that Fourth National's actions were in compliance with R.C. 2721.12.

{¶49} R.C. 2721.12(A) provides that when declaratory relief is sought, "[i]n any action or proceeding that involves the validity of a municipal ordinance or franchise, the municipal corporation shall be made a party and shall be heard, and, if any statute or the ordinance or franchise is alleged to be unconstitutional, the

attorney general also shall be served with a copy of the complaint in the action or proceeding and shall be heard."

{¶50} In *Cicco v. Stockmaster*, 89 Ohio St.3d 95, 728 N.E.2d 1066 (2000), the Supreme Court of Ohio discussed a former version of R.C. 2721.12. The plaintiffs in *Cicco* had filed a complaint for personal injuries following an automobile accident. They challenged the constitutionality of insurance statutes for the first time in their motion for summary judgment, and they sent a copy of their summary-judgment motion to the Attorney General via ordinary mail. *Id.* at 98. They did not serve a copy of the complaint on the Attorney General by summons under the rules. The court held that service of the motion for summary judgment by ordinary mail was not sufficient to comply with R.C. 2721.12, stating that "under the former version of R.C. 2721.12, a petitioning party seeking a court declaration that a statute is unconstitutional must assert the claim in a complaint or other initial pleading, or an amended complaint or amended initial pleading. The issue is not properly put before a court in a motion for summary judgment." *Id.* at 99. The court further held that the provisions of R.C. 2721.12 are to be applied at the inception of a case to give the Attorney General time to evaluate the issues and determine whether or not to participate in the action, and that the Attorney General must be served in accordance with the methods of service in Civ.R. 4.1. *Id.* Compliance with these requirements is necessary to vest the trial court with jurisdiction. *Id.* at syllabus.

{¶51} The case at bar is distinguishable from *Cicco*. Unlike *Cicco*, Fourth National raised its constitutional challenge in a counterclaim asserted in its answer to the city's amended complaint. And unlike *Cicco*, Fourth National properly served its counterclaim via personal service pursuant to Civ.R. 4.1, not by ordinary mail, and it served the Attorney General with the counterclaim, not just a motion raising the issue. Although Fourth National did not serve the answer and counterclaim on the Attorney General at the inception of the case, the Attorney General had time to review the matter after receiving service and in fact elected not to participate in the

17

action. Neither the city nor the Attorney General was prejudiced by the late service on the Attorney General.

{¶52} We hold that the trial court did not err in determining that it had subject-matter jurisdiction over the action because Fourth National had complied with R.C. 2721.12.

### B. Standing

{¶53} The city additionally argues in its first assignment of error that Fourth National lacked standing to challenge the city's sign laws because it did not own the wall on which the illegal sign was installed and, consequently, it had not demonstrated an actual, legal injury.

{¶54} Whether a party has standing to sue is a question of law, which we review de novo. *Moore v. City of Middletown*, 133 Ohio St.3d 55, 2012-Ohio-3897, 975 N.E.2d 977, ¶ 20. To establish standing, a plaintiff must show that she or he suffered "(1) an injury that is (2) fairly traceable to the defendant's allegedly unlawful conduct, and (3) likely to be redressed by the requested relief." *Id.* at ¶ 22, citing *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560-561, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992).

{¶55} The city raised this standing argument for the first time in its second motion for summary judgment. It argued that it was entitled to judgment as a matter of law because it had learned during discovery following this court's remand that the wall on which the illegal sign was installed was not owned by Fourth National, but rather was a remaining wall from the structure that had formerly stood adjacent to Fourth National's building.

{¶56} The city filed several affidavits and depositions in support of its standing argument. James Brunner, an inspector in the city's Department of Buildings and Inspections, averred that Fourth National had submitted a report in connection with the city's façade inspection program indicating that the wall on

which the sign had been installed was not located on Fourth National's property. Brunner additionally averred that Robert Brown, a controlling member of Fourth National Realty, LLC, had advised him that Fourth National was not responsible for the maintenance of the wall because the wall was the remnant of a demolished building that had been located on the adjoining property.

{¶57} Joseph Koopman, a surveyor in the city's Department of Transportation and Engineering, likewise averred that the eastern wall of the property located at 108 W. Third Street is located on adjacent property.

{¶58} In a deposition, Robert Brown conceded that most of the building's eastern wall is located on an adjacent parking lot, explaining that the eastern wall of 108 W. Third Street is abutted by the remains of the western wall of a now-demolished building on that property. He explained that the building located at 108 W. Third Street is currently vacant, but that it has been continually leased to ONI Advertising, who subleases the property to John Morrell. Both the lease and sublease permit the tenant to place signs on the building's eastern wall. Brown testified that ONI Advertising had reached an agreement with the neighboring property owner, which allowed it to purchase the air rights from the parking lot owner, to install lights on the remnants of the western wall, and to hang a sign on that wall. According to Brown, Fourth National was a third-party beneficiary to that agreement.

{¶59} Joseph Vogel testified that he is the owner of ONI Advertising, and that ONI Advertising has an oral agreement with the owner of the parking lot that abuts the property located at 108 W. Third Street. The agreement was reached approximately ten years ago, when Vogel agreed to pay that owner $500 for air rights, which allowed him to install illuminating lights and a sign on the wall.

{¶60} In response, Fourth National filed an affidavit from Vogel that was in accordance with his deposition testimony. It additionally filed an affidavit from Jim Miller, a structural engineer, who stated that in his opinion, the eastern wall of the

building and the remaining western wall of the now-demolished building that had formerly stood adjacent to 108 W. Third Street were structurally one and the same, in essence a common wall.

{¶61} Following our review of the record, we conclude that, although it does not own the wall on which the sign was installed, Fourth National has standing to challenge the city's off-site sign prohibition provisions. The city's enforcement of these provisions resulted in injury to Fourth National. Both Fourth National's lease with ONI Advertising and the sublease with John Morell permitted the tenant to hang a sign on the eastern wall of the building. If the off-site sign provisions are enforced, Fourth National will be deprived of any income stream it had received from the lease. A favorable ruling on its constitutional challenge would redress Fourth National's injury, as it would be allowed to install an off-site advertising sign on the building.

{¶62} Having determined that the trial court had jurisdiction over Fourth National's counterclaim, we overrule the city's first assignment of error.

### C. Constitutionality of Off-Site Sign Provisions

{¶63} In its second assignment of error, the city argues that to the extent that Ordinance No. 372-2017 did not moot Fourth National's counterclaim, the trial court erred in failing to grant summary judgment to the city on the merits of the counterclaim because the challenged provisions were not unconstitutional.

{¶64} The trial court declined to address this argument after determining that Ordinance No. 372-2017 had rendered the counterclaim moot. Because the trial court did not decide this issue, we decline to address it for the first time on appeal. *See Riverside v. State*, 190 Ohio App.3d 765, 2010-Ohio-5868, 944 N.E.2d 281,¶ 58 (10th Dist.); *Bowen v. Kil-Kare, Inc.*, 63 Ohio St.3d 84, 89, 585 N.E.2d 384 (1992). The assignment of error is not ripe for review and is overruled.

### 5. CONCLUSION

{¶65} We affirm the trial court's judgment in part and reverse it in part. We affirm that portion of the judgment determining that Ordinance No. 372-2017 had rendered moot Fourth National's facial overbreadth challenge to the city's off-site sign prohibition provisions. But we reverse the portion of the trial court's judgment determining that the ordinance had rendered moot Fourth National's as-applied challenge to the city's off-site sign prohibition provisions, and we remand this cause for the trial court to consider the merits of Fourth National's as-applied constitutional challenge.

Judgment affirmed in part, reversed in part, and cause remanded.

CROUSE and WINKLER, JJ., concur.

Please note:

The court has recorded its own entry on the date of the release of this opinion.