[Cite as *Cincinnati v. Fourth Natl. Realty, L.L.C.*, 2023-Ohio-1012.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

| | | |
|---|---|---|
| CITY OF CINCINNATI, | : | APPEAL NO. C-220209 |
| | | TRIAL NO. A-1503539 |
| Plaintiff-Appellee, | : | |
| vs. | | |
| | : | |
| FOURTH NATIONAL REALTY, LLC, | | *O P I N I O N.* |
| | : | |
| Defendant-Appellant. | : | |

Civil Appeal From: Hamilton County Court of Common Pleas

Judgment Appealed From Is: Affirmed

Date of Judgment Entry on Appeal: March 29, 2023

*Emily Smart Woerner,* City Solicitor, *Marion E. Haynes, III,* Deputy Solicitor, and *Mark R. Manning*, Assistant City Solicitor, for Plaintiff-Appellee,

*Holzapfel Law, LLC,* and *Eric C. Holzapfel,* for Defendant-Appellant.

**Bock, Judge.**

{¶1} Defendant-appellant Fourth National Realty, LLC, appeals the trial court's grant of summary judgment in favor of plaintiff-appellee City of Cincinnati ("the City"). Fourth National argues that the trial court abused its discretion when it denied Fourth National leave to amend and supplement its answer, and that the City's off-site and outdoor-advertising sign prohibitions violate its free-speech rights. For the following reasons, we affirm the trial court's judgment.

## I. Facts and Procedure

{¶2} This is the third time this case is before us on appeal. *See Cincinnati v. Fourth Natl. Realty, LLC*, 2017-Ohio-1523, 88 N.E.3d 1278 (1st Dist.) ("*Fourth I*"), and *Cincinnati v. Fourth Natl. Realty, LLC*, 1st Dist. Hamilton Nos. C-180156 and C-180174, 2019-Ohio-1868 ("*Fourth II*"). The dispute concerns an advertisement ("sign") affixed to the exterior of a building owned by Fourth National in the City's "Downtown Development" ("DD") zoning district:



{¶3} Fourth National hung the sign without securing the necessary permit and zoning variance. *Fourth II* at ¶ 4. The sign ran afoul of the Cincinnati Zoning Code ("Zoning Code") as an off-site sign prohibited by Zoning Code 1427-17. *Id.* It was an off-site sign under former Zoning Code 1427-03-O because it "direct[ed] attention to a business, commodity, service, person or entertainment conducted, sold, or offered elsewhere than on the premises where the sign is maintained." *Id.* at ¶ 6. In addition, it contravened the Zoning Code's prohibition on outdoor-advertising signs in the DD zoning district. *Id.* at ¶ 4. The sign fell under former Cincinnati Municipal Code ("Municipal Code") 895-1-O's definition of outdoor-advertising signs because it was "affixed to a structure, visible from any street, highway, or other public way or park, displaying a message or promoting goods, products, services, events, activities, ideas, opinions, and candidates for public office." *Id.*

{¶4} The City filed for injunctive relief against Fourth National, requesting a preliminary and permanent injunction ordering Fourth National to remove the sign. In response, Fourth National raised free-speech, equal-protection, and tort counterclaims. Both parties moved for summary judgment. The trial court granted the City's motion for summary judgment, ordered the removal of the sign, and dismissed Fourth National's counterclaims. On appeal, we reversed the trial court's judgment and remanded the case, holding that Fourth National had standing to raise both as-applied and facial challenges under the First Amendment to the United States Constitution and Section 11, Article I, of the Ohio Constitution. *Fourth I* at ¶ 47.

{¶5} Meanwhile, the City passed Ordinance No. 372-2017, which amended parts of the Zoning Code, including the definition of outdoor-advertising signs to "have the same meaning as 'Off-Site-Sign.'" *Fourth II,* 1st Dist. Hamilton Nos. C-180156 and C-180174, 2019-Ohio-1868, at ¶ 15. And the ordinance narrowed the definition of off-

3

site signs under former Zoning Code 1427-03-O as follows:

> Commercial Sign (i) that proposes or promotes a commercial transaction to be conducted on a premises other than the premises on which the sign is located; or (ii) directs attention to a good, product, commodity, business, service, event, or other object that serves as the basis of a commercial transaction that is not conducted on the same premises as the premises on which the sign is located.

{¶6}  In the trial court, Fourth National unsuccessfully moved to add additional counterclaims. Again, the parties filed competing summary-judgment motions. Relevant here, the trial court ruled that the 2017 ordinance "changed the legal effect of the City's sign code" and mooted Fourth National's free-speech claims.[1] We affirmed, in part, agreeing that the 2017 ordinance mooted Fourth National's facial challenge. *Fourth II* at ¶ 37. But we reversed the trial court's ruling that Fourth National's as-applied challenge was moot, explaining:

> Fourth National's proposed sign would indisputably advertise products not sold on the premises and would qualify as an off-site sign both before and after the enactment of Ordinance No. 372-2017. Consequently, the sign remained in violation of [Zoning Code] 1411-39 and 1427-17. The restriction as applied to Fourth National remained unaltered by the ordinance and prohibited off-site signs while allowing on-site signs, which, according to Fourth National is an impermissible

---

[1] In addition, the trial court rejected the City's jurisdictional challenge based on Fourth National's alleged failure to serve the Attorney General in violation of R.C. 2721.12. The City appealed that decision. *See Fourth II* at ¶ 17. We rejected the City's claim that the trial court lacked subject-matter jurisdiction. *Id*. at ¶ 52. The Ohio Supreme Court affirmed and remanded the case to the trial court to consider Fourth National's free-speech claim. *City of Cincinnati v. Fourth Natl. Realty, L.L.C.*, 163 Ohio St.3d 409, 2020-Ohio-6802, 170 N.E.3d 832, ¶ 2.

4

content-based prohibition. We therefore hold that Fourth National's as-
applied challenge was not rendered moot by Ordinance No. 372-2017,
and that the trial court erred in determining otherwise.

*Fourth II* at ¶ 42. We remanded the case to the trial court.

{¶7} In November 2020, the City passed Ordinance No. 280-2020 ("2020 Ordinance"), which uncoupled the meanings of outdoor-advertising signs and off-site signs under the Zoning Code. Now an outdoor-advertising sign is either:

(i) a sign for which its owner or operator receives, or is entitled to receive, rent or other consideration from another person or entity in exchange for the use of the sign, including for the placement of a message on the sign; or (ii) a sign that is offered or made available by its owner or operator for use by another person or entity, including for the placement of a message on the sign, in exchange for rent or other consideration.

{¶8} Fourth National attempted to reassert its four original counterclaims in an April 2021 motion for leave to file an amended and supplemental counterclaim. The trial court denied that motion. In September 2021, the parties filed competing summary-judgment motions. Relevant here, Fourth National cited the definition of outdoor-advertising signs, as amended by the 2020 Ordinance.

{¶9} Then in October 2021, Fourth National filed a motion for leave to amend its answer and counterclaims, citing the amendments made by the 2020 Ordinance. Fourth National again tried to revive its facial challenge to the Zoning Code, equal-protection claim, and damages claim under 42 U.S.C. 1983. Fourth National also alleged a broad claim that the Zoning Code's restrictions constituted a taking in violation of the Fifth Amendment to the United States Constitution. The trial court

5

denied Fourth National's motion for leave to amend its answer and counterclaims. Months later, the trial court again granted summary judgment for the City.

{¶10} Fourth National appeals. In two assignments of error, Fourth National asks us to reverse the trial court's grant of summary judgment and denial of its motion for leave to amend its answer and counterclaims.

## II. Law and Analysis

Fourth National's Motion For Leave Was Untimely

{¶11} In its first assignment of error, Fourth National argues that the trial court abused its discretion when it denied Fourth National's third motion for leave to file an amended answer and counterclaims. Fourth National argues that amending its answer and counterclaims under Civ.R. 15(A) was proper because of the change to the Zoning Code and its timely request.

{¶12} We review the denial of a motion for leave to amend a pleading for an abuse of discretion. *See Meehan v. Mardis*, 1st Dist. Hamilton No. C-210399, 2022-Ohio-1379, ¶ 4, citing *Turner v. Cent. Local School Dist.*, 85 Ohio St.3d 95, 99, 706 N.E.2d 1261 (1999). A trial court abuses its discretion when its decision is unreasonable, arbitrary, or unconscionable. *AAAA Ents. v. River Place Community Urban Redevelopment Corp.*, 50 Ohio St.3d 157, 161, 553 N.E.2d 597 (1990).

{¶13} Relevant here, Civ.R. 15(A) provides that "a party may amend its pleading only with the opposing party's written consent or the court's leave. The court shall freely give leave when justice so requires." While the rule advocates for granting leave when justice so requires, "motions to amend pleadings pursuant to Civ.R. 15(A) should be refused if there is a showing of bad faith, undue delay, or undue prejudice to the opposing party." *Meehan* at ¶ 5, quoting *Turner* at 99.

6

{¶14} Fourth National claims its motion for leave was timely. The City disagrees. Ordinarily, delay is generally not enough to deny leave to amend without a showing of prejudice from the delay. But as we have explained, " 'where a motion for leave to file an amended complaint is not timely tendered and there is no apparent reason to justify the delay, a trial court does not abuse its discretion in denying a proposed amendment.' " *Meehan* at ¶ 6, quoting *Franciscan Communities, Inc. v. Rice,* 8th Dist. Cuyahoga No. 109889, 2021-Ohio-1729, ¶ 37.

{¶15} The City passed the 2020 Ordinance on November 12, 2020. Fourth National cited the amended definition in its September 2021 motion for summary judgment. The City moved for summary judgment three days later. And roughly one month later, Fourth National filed its third motion for leave to amend, attempting to revive its dismissed claims and add its takings claim. While Fourth National argues that the City passed the 2020 Ordinance in a clandestine manner, the record shows that the 2020 Ordinance was published in the City's bulletin in November 2020.

{¶16} With no apparent reason to justify this delay, the trial court did not abuse its discretion when it denied Fourth National's motion. *See Franciscan Communities* at ¶ 40 (" 'where information relied upon in seeking leave to amend should have been known to a plaintiff earlier, a plaintiff's delay in seeking leave to amend can be considered unjustified,' and a trial court can reasonably deny a motion for leave to amend on that basis."). Thus, we overrule the first assignment of error.

<u>The City's Commercial-Speech Restrictions Are Constitutional</u>

{¶17} In its second assignment of error, Fourth National challenges the trial court's grant of summary judgment in favor of the City. Fourth National maintains that the Zoning Code restrictions violate its free-speech rights guaranteed by the Ohio and United States Constitutions.

{¶18} We review a trial court's grant of summary judgment de novo. *Collett v. Sharkey*, 1st Dist. Hamilton No. C-200446, 2021-Ohio-2823, ¶ 8. "Summary judgment is appropriately granted when there exists no genuine issue of material fact, the party moving for summary judgment is entitled to judgment as a matter of law, and the evidence, when viewed in favor of the nonmoving party, permits only one reasonable conclusion that is adverse to that party." *Id.*

{¶19} Zoning Code 1427-17 restricts the zoning districts where an off-site sign may be displayed. It prohibits off-site signs in the DD zoning district. Under Zoning Code 1427-03-O, off-site signs are commercial signs that promote (1) off-premises commercial transactions or (2) off-site goods, products, commodities, services, events, businesses, or other objects. And Zoning Code 1411-39(a)'s restriction of outdoor advertisements applies to signs displayed by a property owner in exchange for consideration. Municipal Code 891-1-O.

{¶20} Fourth National acknowledges that regulations distinguishing off-site signs from on-site signs have been upheld as constitutional under the First Amendment to the United States Constitution. *See City of Austin v. Reagan Natl. Advertising of Austin, LLC*, ___U.S.___, 142 S.Ct. 1464, 1469, 212 L.Ed.2d 418 (2022) (recalling that "federal, state, and local governments have long distinguished between signs (such as billboards) that promote ideas, products, or services located elsewhere and those that promote or identify things located onsite."). Instead, Fourth National attempts to distinguish federal precedent upholding these distinctions under the United States Constitution from state-court opinions interpreting Section 11, Article I of the Ohio Constitution, which provides that "no law shall be passed to restrain or abridge the liberty of speech." To this end, Fourth National relies heavily

8

on the Ohio Supreme Court's decision in *Norton Outdoor Advertising, Inc. v. Arlington Hts.,* 69 Ohio St.2d 539, 542, 433 N.E.2d 198 (1982).

{¶21} We are not persuaded. The Ohio Supreme Court has repeatedly stated that "the free speech guarantees accorded by the Ohio Constitution are no broader than the First Amendment, and that the First Amendment is the proper basis for the interpretation of Section 11, Article I of the Ohio Constitution." *Eastwood Mall v. Slanco,* 68 Ohio St.3d 221, 222, 626 N.E.2d 59 (1994) (collecting cases).

{¶22} At oral argument, Fourth National agreed that the restrictions target commercial speech, which receives lesser protection than other constitutionally-protected speech. *See City of Austin* at 1469*; see also Cent. Hudson Gas & Elec. Corp. v. Pub. Serv. Comm.,* 447 U.S. 557, 562-563, 100 S.Ct. 2343, 65 L.Ed.2d 341 (1980). Indeed, commercial speech may be subjected to " 'modes of regulation that might be impermissible in the realm of noncommercial expression.' " *Bd. of Trustees v. Fox*, 492 U.S. 469, 477, 109 S.Ct. 3028, 106 L.Ed.2d 388 (1989), quoting *Ohralik v. Ohio State Bar Assn.,* 436 U.S. 447, 456, 98 S.Ct. 1912, 56 L.Ed.2d 444 (1978). And it is well-settled that commercial-speech restrictions receive a lesser form of scrutiny, and courts "distinguish commercial speech from speech at the First Amendment's core." *Florida Bar v. Went for It*, 515 U.S. 618, 623, 115 S.Ct. 2371, 132 L.Ed.2d 541 (1995).

{¶23} We review the commercial-speech regulations in this case under the test set forth in *Cent. Hudson*. When the government attempts to regulate non-misleading commercial speech related to a lawful activity, the government must assert a substantial interest achieved by the regulation, the regulation must directly advance the state interest, and it must be no more extensive than necessary to serve that interest. *Cent. Hudson* at 564-566. The parties do not dispute that the City is regulating nonmisleading speech relating to lawful activity. And "it is far too late to

9

contend" that public safety and aesthetics are not substantial government interests. *Metromedia, Inc. v. City of San Diego*, 453 U.S. 490, 508, 101 S.Ct. 2882, 69 L.Ed.2d 800 (1981) (collecting cases). Rather, the central issue in this case is whether the speech restrictions directly advance the City's interest in public safety and aesthetics, and whether the restrictions are no more extensive than necessary.

{¶24} The City's commercial-speech restrictions must directly advance its stated interests in aesthetics and public safety. In *Cent. Hudson,* the Court considered whether the state's interest was directly advanced by the restriction in question, looking for an "immediate connection" or "direct link" between the restriction and interest. *Cent. Hudson* at 569. The City must show, "that the harms it recites are real and that its restriction will in fact alleviate them to a material degree." *Went For It* at 626, quoting *Rubin v. Coors Brewing Co.,* 514 U.S. 476, 487, 115 S.Ct. 1585, 131 L.Ed.2d 532 (1995), quoting *Edenfield v. Fane*, 507 U.S. 761, 767, 113 S.Ct. 1792, 123 L.Ed.2d 543 (1993). In its motion for summary judgment, the City relied on expert reports from several of its employees, including a traffic engineer, a senior city planner, and a zoning administrator.

{¶25} Beginning with public safety, we hold that the zoning provisions directly advance the City's interest. The reports established that advertisements for off-site businesses or products distract drivers without providing any navigational assistance to drivers. Most buildings in the DD zoning district "are built to the sidewalk and are several stories high," making signs such as Fourth National's difficult to read while driving. The lack of a wayfinding element in off-site and outdoor-advertising signs, and potential for driver distraction, increase the risk of a severe injury because of the speed limits in the DD zoning district and significant pedestrian activity. Infact, Fourth National's sign is within roughly 111 feet of a crosswalk. While on-site signs were

acknowledged in the reports as "unavoidable distractions," prohibiting additional off-site signs temper the amount of driver distractions, to some degree.

{¶26} In addition, we hold that the zoning provisions directly advance the City's interest in aesthetics. The reports established that off-site and outdoor-advertising signs, in an attempt to compete with on-site signs, are indiscriminately placed, obscure architectural features, spoil natural views and scenic ways, and "generally overwhelm[] the urban environment." The DD zoning district includes a large historic district featuring "the architectural features of the style and time period." That same report concluded that the restrictions "preserve the historic and aesthetic character of our residential areas and neighborhood business districts." It is incontrovertible that "billboards [and signs] by their very nature, wherever located and however constructed, can be perceived as an 'esthetic harm.' " *Metromedia*, 453 U.S. at 510, 101 S.Ct. 2882, 69 L.Ed.2d 800. Absent an impermissible purpose, minimizing the presence of these structures typically advance the goal of preserving aesthetics. *Id*. In other words, there is a direct link between the sign restrictions and the City's interest in preserving aesthetics.

{¶27} While Fourth National contends that the existence of on-site signs undercuts the City's reliance on its stated interests, this line of argument has been repeatedly rejected by federal and state courts. *See, e.g., Suburban Lodges of Am., Inc. v. City of Columbus Graphics Comm.,* 145 Ohio App.3d 6, 15, 761 N.E.2d 1060 (10th Dist.2000) (citing *Metromedia* to reject an argument that under-inclusivity was fatal to a commercial-speech restriction and refusing to question the city's "common-sense conclusion that limiting the text of advertising signs generally reduces visual clutter along the highway and reduces the possibility of traffic accidents."). And while Fourth National offered an expert report that attempted to challenge the findings made by the

City's experts, her conclusions cannot overcome the "common-sense conclusion" that limiting the proliferation of signs in a pedestrian-dense, historic neighborhood advances the City's interests in public safety and aesthetics.

{¶28} Finally, the regulations must be no more extensive than necessary to advance aesthetics and public safety. The constitutional guarantees of free speech do not require a perfect fit, but one that is reasonable. *See Fox*, 492 U.S. at 480, 109 S.Ct. 3028, 106 L.Ed.2d 388. On one hand, the City must show that the regulation is "carefully calculated," not that the regulation is the "least restrictive" way to achieve its interests. *Id.* On the other hand, "if there are numerous and obvious less-burdensome alternatives to the restriction on commercial speech, that is certainly a relevant consideration in determining whether the 'fit' between ends and means is reasonable." *Cincinnati v. Discovery Network,* 507 U.S. 410, 417, 113 S.Ct. 1505, 123 L.Ed.2d 99 (1993), fn. 13. The City's expert reports established that the off-site and outdoor-advertising signs were permitted in other parts of Cincinnati, in areas with "less multiple simultaneous driver distractions, where the scale of the signs correlated to the speed of traffic and where generally residential uses were not disrupted by the scale, lighting, and messages." Like those in *Metromedia* and *Suburban Lodges,* the restrictions do not constitute a complete ban on off-site and outdoor-advertising signs. Therefore, the Zoning Code's commercial-speech restrictions of off-site and outdoor-advertising signs are reasonable, and are calculated to advance the City's interests.

{¶29} In sum, the City's sign restrictions in the Zoning Code directly advance the City's substantial interests in public safety and aesthetics, and the restrictions are no more extensive than necessary. Fourth National's second assignment of error is overruled.

12

## III. <u>Conclusion</u>

{¶30}   For the reasons stated, we overrule Fourth National's two assignments of error and affirm the trial court's judgment.

Judgment affirmed.

**CROUSE, P.J.,** and **WINKLER, J.,** concur.

Please note:

The court has recorded its entry on the date of the release of this opinion.