[Cite as *Laudato v. Newark Leasing, L.L.C.*, 2026-Ohio-968.]

COURT OF APPEALS
LICKING COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | |
|---|---|
| NICHOLAS LAUDATO, ADMINISTRATOR OF THE ESTATE OF HALLIE WITHEM, | Case No. 25CA0046 |
| | Opinion & Judgment Entry |
| Plaintiff - Appellant | Appeal from the Court of Common Pleas of Licking County, Case No. 21CV00827 |
| -vs- | |
| NEWARK LEASING, LLC, | Judgment: Affirmed |
| | Date of Judgment: March 19, 2026 |
| Defendant - Appellee | |

BEFORE: William B. Hoffman, Andrew J. King, and David M. Gormley, Judges

APPEARANCES: Louis C. Schneider (Thomas Law Offices), Cincinnati, Ohio, for Plaintiff-Appellant; G. Brenda Coey (Coey Law Firm), North Canton, Ohio, for Defendant-Appellee.

*Gormley, J.*

**{¶1}** In this negligence and wrongful-death case, plaintiff Nicholas Laudato, in his capacity as representative of the estate of the late Hallie Withem, challenges the trial court's decision granting a directed verdict in favor of defendant Newark Leasing, which operates a skilled-nursing facility known as Newark Care and Rehabilitation Center. For the following reasons, we affirm.

**The Key Facts**

**{¶2}** Hallie Withem was a years-long resident of Newark Leasing's nursing home, and she received treatment there for diabetes and other chronic conditions.

**{¶3}** In 2019, Hallie's physician signed an order instructing the facility to inform him whenever Hallie showed any signs of having contracted a urinary-tract infection. One day in June 2020, a nurse found Hallie unresponsive in her room. Hallie was transported

to a hospital, where she died two days later.  Her death certificate listed the cause of death as septic shock due to a urinary-tract infection.

{¶4} Ruth Withem was Hallie's daughter, and — as the initial administrator of Hallie's estate — she filed a complaint against the nursing facility in 2021 alleging negligence and wrongful-death claims.  That complaint asserted that Newark Leasing had failed to prevent the development of urinary-tract infections and sepsis in Hallie, had failed to properly treat those conditions, had failed to provide adequate nutrition and hydration to Hallie, and had otherwise acted negligently in treating her.

{¶5} Ruth retained a medical doctor named Joe Haines as her sole medical expert, and he opined that the Newark Leasing facility had violated the standard of care by failing to monitor the color, odor, and other characteristics of Hallie's urine.  That failure, according to Dr. Haines's testimony at a deposition, had allowed a urinary-tract infection to progress undetected to the point where sepsis developed, followed by septic shock and then death.

{¶6} After discovery depositions were completed, Newark Leasing moved for summary judgment in its favor.  The trial court granted that motion, finding that Ruth, in response to the motion, had offered no evidence that Hallie had shown any signs of having developed a urinary-tract infection before she was found unresponsive.  Ruth had also, according to the trial court's summary-judgment ruling, presented no facts that might support her medical expert's view that Newark Leasing had violated its duty of care to Hallie.

{¶7} Ruth appealed, arguing that the trial court had improperly granted summary judgment in Newark Leasing's favor.  We reversed the trial court's judgment, finding that reasonable minds could differ about the medical expert's opinion that the

nursing facility had violated a duty of care. *Withem v. Newark Leasing, LLC*, 2024-Ohio-2607, ¶ 24 (5th Dist.).

**{¶8}** On remand, the trial court scheduled a jury trial in the case. Less than two weeks before the starting date for that trial, Ruth asked the trial court to delay the trial because Dr. Haines's health had deteriorated and he could no longer testify. The trial court granted that request, rescheduled the trial, and permitted Ruth to locate and identify a replacement expert.

**{¶9}** Ruth then retained medical doctor Tim Beck as her expert. In his expert report and at a deposition (which was to be played at any trial), Dr. Beck offered a different opinion from the one earlier advanced by Ruth's first expert. According to Dr. Beck, Hallie's death had resulted not from undetected urinary-tract infections and sepsis but instead from a catastrophic hypoglycemic — low blood sugar — event caused by the nursing home's failure to properly monitor and manage Hallie's blood-glucose level. In Dr. Beck's opinion, Hallie was not eating enough in the days before her death, and yet the staff at the nursing home continued to administer insulin to her at a rate that pushed the amount of glucose in her blood to a dangerously low level.

**{¶10}** With that new opinion in hand, Ruth — ten days before the rescheduled starting date for the trial — sought permission from the trial court to amend the original complaint to incorporate her new expert's opinion. The trial court denied that request.

**{¶11}** Then, three days before the trial was to begin, Ruth sought a new delay for the starting date of the trial because Ruth herself had become ill with sepsis and was hospitalized. The trial court denied that motion, too, and at the same time limited the scope of the new expert's proposed testimony to the theory alleged in Ruth's complaint. Under the trial court's ruling, Dr. Beck's trial testimony was to focus solely on his views

about the role that a urinary-tract infection and sepsis may have played in Ruth's death, and he was not to opine about food-intake or blood-sugar issues.

{¶12} As soon as a jury had been seated and sworn on the first day of the trial, Newark Leasing moved for a directed verdict, arguing that Ruth's one remaining expert — Dr. Beck — was not going to support the urinary-tract-infection theory alleged in the complaint, and so Ruth would, in Newark Leasing's view, be unable to prove her negligence and wrongful-death claims. The trial court agreed, and the judge granted Newark Leasing's directed-verdict motion.

{¶13} Since then, Hallie's daughter Ruth has passed away, and current plaintiff Nicholas Laudato — the appellant here — has been substituted in Ruth's place as the administrator of Hallie's estate.

## The Trial Court Did Nothing Wrong When It Denied Ruth's Motion to Amend the Complaint

{¶14} We review for an abuse of discretion any trial-court decision denying a motion for permission to file an amended complaint. *See Scott Holding Co. v. Turbo Restaurants US, LLC*, 2024-Ohio-5240, ¶ 27 (5th Dist.).

{¶15} The proposed amended complaint that Ruth wanted to file ten days before the June 2025 trial date sought to shift the focus of the case from an alleged infection in Hallie's urinary tract to the view that food-intake and blood-sugar problems had been the cause of Hallie's final illness and death. That proposed shift would not have reflected a minor clarification or a mere refinement of the allegations in the September 2021 complaint but would instead have represented a wholesale replacement of the theory of liability that had been the subject of both the trial court's summary-judgment ruling in 2023 and the first appeal here in 2024.

{¶16} Ohio's relevant statute of repose — meaning the time within which a medical-negligence or wrongful-death claimant must file any lawsuit to recover damages for those alleged harms — is, according to R.C. 2305.113(C), four years. When Ruth asked the trial court, in May 2025, for permission to amend her complaint so that she could shift her theory of liability from one that focused on an infection in Hallie's urinary tract to an allegation that Hallie's blood-sugar level had not been properly monitored and controlled by Newark Leasing, Hallie had already been dead for almost five years. Even if Ruth's attempt in 2025 to shift the focus of her lawsuit from the initial infection-related theory of wrongdoing to the much different one focusing on the blood-sugar issue did not run afoul of the statute of repose — because Ruth had, after all, filed just a year after Hallie's death a complaint alleging negligence and wrongful-death claims, and she still hoped in 2025 to pursue those same claims (albeit with a focus on different facts and with a different expert opinion about what Newark Leasing had done wrong) — Ruth's late-in-the-game switch to a new expert and a much different theory of liability was understandably troubling to the trial judge.

{¶17} Had the trial court approved the proposed amendment so close to trial, Newark Leasing would have been forced to defend against a fundamentally different theory after focusing for nearly four years on the much different factual allegations in the original complaint. Ruth's delay in bringing her new theory to the fore justified the trial court's decision to deny her request. *See Everhart v. Coshocton Cty. Mem. Hosp.*, 2024-Ohio-1671, ¶ 8 (10th Dist.) ("When considering a plaintiff's motion for leave to amend its complaint, a trial court's primary consideration is whether there is actual prejudice to the defendants because of the delay") (quotations omitted); *Hall v. Dasher*, 2022-Ohio-1735,

¶ 32 (5th Dist.) ("Prejudice to an opposing party is the most critical factor to be considered in determining whether to grant leave to amend").

**{¶18}** To be sure, Dr. Beck's expert report — in which he first offered his opinion about Hallie's illness and death — had evidently been shared with Newark Leasing some four months before the scheduled starting date for the trial. Even so, by waiting until ten days before the trial's starting date to ask for permission to amend the complaint, Hallie took the chance that the trial court would look askance at her failure to move more quickly.

**{¶19}** We cannot say that the trial court acted unreasonably in these circumstances. *See Cincinnati v. Fourth Natl. Realty*, 2023-Ohio-1012, ¶ 14 (1st Dist.) ("where a motion for leave to file an amended complaint is not timely tendered and there is no apparent reason to justify the delay, a trial court does not abuse its discretion in denying a proposed amendment") (quotations omitted); *Hanick v. Ferrara*, 2020-Ohio-5019, ¶ 45 (7th Dist.) ("If no reason is apparent which justifies the delay for an untimely motion to amend, a trial court does not abuse its discretion in refusing to allow amendment").

## The Trial Court Did Not Err When It Denied Ruth's Motion to Delay the Trial

**{¶20}** We review for an abuse of discretion a trial court's decision to deny a request to continue a trial. *Kirkpatrick v. Kirkpatrick*, 2015-Ohio-427, ¶ 21 (5th Dist.). In our review, we consider the following: (1) the length of the requested delay, (2) whether other continuances have been granted, (3) any inconvenience to witnesses, opposing counsel, and the court, (4) whether a legitimate reason exists, (5) whether the movant is

responsible for the circumstances giving rise to the continuance request, and (6) other relevant factors. *Matter of C.W.*, 2025-Ohio-282, ¶ 50 (10th Dist.).

**{¶21}** Undoubtedly, Ruth offered a legitimate reason for seeking a continuance of the trial just three days before it was to begin in June 2025:  She was in ill health and was hospitalized.  And, of course, Ruth was not at fault in bringing about her circumstances.  Those factors, though, do not end the inquiry.

**{¶22}** Ruth did not propose a new trial date in her motion, and the record suggests that any continuance would have been a lengthy one, given Ruth's bleak condition and the possible need for the court to appoint a new estate administrator if — as in fact was true — her health continued to worsen until she passed away.  The trial court had already granted one continuance when Ruth's original expert became unavailable after the first appeal in 2024.  The inconvenience to Newark Leasing, to its witnesses, and to the trial court from a last-minute disruption of the trial schedule was considerable.

**{¶23}** Moreover, Ruth did not tell the court how any additional time would aid her case, and that factor can be important.  *See State v. Smith*, 2025-Ohio-5217, ¶ 11-12 (5th Dist.) (where the movant failed to explain how additional time would help him prepare for trial, a trial court did not abuse its discretion by denying a continuance request that had been filed four days before trial in a case that had been pending for over a year).

**{¶24}** And presumably the outcome of the trial would have turned not on whether Ruth was sitting in the courtroom but rather whether her counsel could, through expert testimony, convince the jury that Newark Leasing had provided negligent medical care to Hallie.  Ruth's presence at the trial does not strike us as essential, and the trial court's decision to try to keep the long-delayed trial on track as the trial date loomed does not appear to have been unreasonable.

## The Trial Court Properly Granted a Directed Verdict in Newark Leasing's Favor

{¶25} When reviewing a trial court's decision granting a motion for a directed verdict, we ask whether there is probative evidence that — if believed and construed in favor of the nonmovant — would allow reasonable minds to come to different conclusions about the essential elements of the case. *Helfrich v. Foor Family Invest., LLC*, 2022-Ohio-3446, ¶ 48 (5th Dist.). Because a motion for a directed verdict presents a question of law, we approach our analysis with fresh eyes. *Id.*

{¶26} When Newark Leasing moved for a directed verdict on the first day of the trial, Ruth acknowledged that she had no expert lined up who could offer any support for the infection-focused and sepsis-focused allegations in the complaint. Her expert — Dr. Beck — was in fact prepared to disavow those allegations, and, under the trial court's pretrial ruling, Beck would not have been permitted to opine in front of the jury about other possible causes of Hallie's final illness and death.

{¶27} In short, no facts that Ruth was prepared to present at the trial could have led reasonable minds to reach differing conclusions on the causation and breach-of-duty elements of her negligence and wrongful-death claims. A directed verdict in Newark Leasing's favor was therefore proper. *See Orion Mgmt., Inc. v. Kaeka*, 2025-Ohio-1047, ¶ 86 (9th Dist.) ("If the nonmoving party fails to present evidence on one or more essential elements of a claim, a directed verdict is proper") (quotations omitted); *Mayhorn v. Pavey*, 8 Ohio App.3d 189, 193 (10th Dist. 1982) (affirming directed verdict for defendant physician where plaintiff's case depended on expert testimony to establish a breach of the standard of care, and the expert's own testimony failed to provide probative evidence on that issue).

{¶28} For these reasons, the judgment of the Court of Common Pleas of Licking County is affirmed. Costs are to be paid by Appellant Nicholas Laudato in his role as administrator of the estate of Hallie Withem.

By: Gormley, J.;

King, P.J., and

Hoffman, J. concur.